LOUIS ALTHOF, ADMINISTRATOR, AND JANE C. WARNER, ADMINISTRATRIX, OF WILLIAM H. WARNER, DECEASED, *v.* NATHANIEL H. WOLF.

In an action under the statutes of 1847 and 1849, by the representatives of a person killed by the wrongful act, &c., of another, to recover damages for his death, the jury should not, in assessing the damages, allow any deduction because of the fact that his wife had received the amount of an insurance effected upon his life for her benefit.

Where defendant directed his ser[...] 'o remove snow and ice from the roof of his house, giving no specific instr[...] s to the manner of doing it, and the servant

Althof v. Wolf.

procured another to assist him; the ice was so negligently thrown from the roof as to kill a person passing upon the public sidewalk underneath; *Held*, that the defendant was responsible for the whole performance of the work; and it was immaterial whether the death was occasioned by the particular act of the servant, or by that of the other person so engaged.

The only limit to the damages which it is in the power of a jury to award, in an action under the statutes referred to, is the sum therein prescribed by the statute,— $5,000.

It is not error for the presiding judge upon a trial to express his opinion on a question of fact, if the final determination of the question is distinctly left to the jury.

Any one who casts ice, snow, or other missiles from the roof of a house upon the sidewalk of a city street, without stationing some one below to warn passers by, is guilty of gross negligence. And if a person passing underneath is injured by the act, it will not be presumed that such person was negligent so as to defeat a recovery of damages for the injury.

In an action by the representatives of a person, for wrongfully causing his death, the judge charged the jury that the wife and child would have been entitled to a support from him, the former during her life, and the latter until the age of 21; and that he would be entitled to their earnings. *Held*, that the charge was correct.

APPEAL from a judgment entered upon a verdict. The action was by the plaintiffs, as administrators of William H. Warner, to recover damages for his death, caused by the negligent act of defendant's servants.

The trial was had before Judge HILTON and a jury, and the charge of the judge presented the principal grounds of exception by the defendant. It was substantially as follows:

"Gentlemen : The first question for you to consider is, whether the death of Warner was produced by the wrongful act or neglect of the defendant; and this necessarily involves the inquiry as to how the death was caused, and whether it resulted from throwing ice or snow from the defendant's roof. There cannot be much question in your minds on this point; and the defendant's counsel seem hardly to have contested it, but it is for you to determine; and if you come to the conclusion that it was thus caused, you are then to inquire whether the ice or snow was thrown by the defendant, or under the defendant's direction, which amounts to the same thing; and on this point the complaint and answer

may be looked into for evidence.  The complaint alleges that Mr. Warner was killed by snow and ice thrown from the roof of defendant's house, at the corner of Fifth avenue and Twenty-Sixth street, by the defendant's servant, while acting under his direction; and his answer admits that he did direct Fagan, his servant, to throw the snow off the roof.

"It is thus conceded that the snow was removed from the roof by the direction of the defendant, and as it appears that the direction was general, without any specific instructions as to manner, it follows that the servant had a right to do it in the ordinary way, and to employ assistance if that was necessary.  If, therefore, in the performance of such a general direction, an injury to any one, or death, as in this case, was produced, the defendant is liable to the extent of the injury, provided such injury was the result of negligence—a man being, as we all know, liable for the acts of his agents and servants while acting by his direction or authority; but this liability, however, is always dependant upon the condition that the act was wrongful, and the party injured did not contribute by his own neglect to the production of the injury complained of.

"In this case there can be no doubt that the act itself was wrongful, because no person is entitled to throw any substance in a public highway, which may in any manner obstruct it, or diminish its use.  It was negligent, because it was an easy matter to avoid any injury by stationing some one on the sidewalk, or in some other place to notify and warn passers by of the danger; here there is no evidence that any such precautions were taken. Nor can any doubt be entertained as to the right of the deceased to travel on this sidewalk; and as there is no proof of any notice or warning to him against going there, it cannot, under such circumstances, be presumed that he contributed to his death by any negligence on his part.  If, therefore, upon the views you shall take of the evidence respecting the defendant's liability, you determine that by his wrongful act or neglect, or of those acting under his direction, this death was produced, then the remaining question is, what damages, if any, should be awarded for it?

"The statute which authorizes this action, evidently intended to leave this question entirely with you. It says: 'The jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person,' who, in this case, consist of a wife, and a daughter about ten years of age. And in estimating the amount, the law has fixed but one limit to your discretion, and that is, it shall not exceed $5,000.

"This statute has been termed an extraordinary one, and it is so indeed. It virtually puts a limit to the value of a human life; because a man may recover, at common law, damages commensurate with the injury proven; for the loss of a limb you may award damages without limit, except so far as the evidence may control your consciences; but for the taking of life, you cannot exceed a fixed sum. It cannot cost over $5,000, and within this limit you are confined, provided you find the defendant liable at all.

"I might here stop, and leave the matter with you as the statute does, but it may possibly assist you somewhat, in estimating the extent of the pecuniary injury resulting from the death in question, to point to some of the things which will obviously suggest themselves to your consideration, and among these is the probable duration of Mr. Warner's life. He is proven to have been a man of ordinary health, and about forty years of age; and although the law fixes no definite period for the probable duration of human life, or the life of a person of that age, yet it may be communicated to you, that if this court was called upon, as a court of equity, to determine the value of a life estate of a person of that age, in any specific property, we should assume that he would live ten and about seven-tenth years; that being about the average duration of life of a person of that age, according to certain tables compiled from extensive observations, and called the Northampton Tables, and to which recourse would be had in such cases; although this practice would not control a jury. They may, however, have the fact respecting the prac-

tice of the court communicated to them as matter of informa-
tion, and in that light only I state it.

"I may also inform you that the wife was entitled to support
from the deceased during his life, and the child until she arrived
at maturity ; while on the other hand he would have been enti-
tled to their earnings; and the amount of Warner's income may
be considered, to ascertain the character and value of this sup-
port, his skill and industry being circumstances tending to in-
crease the probabilities of the continuance or permanency of such
income."

The jury awarded the plaintiffs $3,500, and from the judgment
entered upon this verdict the defendant appealed.    The principal
facts in the case, together with the requests to charge and the
exceptions taken at the trial, are fully stated in the opinion.

*Richard Busteed and Horace F. Clark,* for the appellant.

I. The court should have charged the jury, as requested, that
in assessing the damages they should take into consideration the
money received by the widow on the policy of life insurance.

II. The instructions of the court in respect to damages were
calculated unduly to enhance the amount of damages.

III. The court should have charged the jury, as requested, in
reference to the liability of the defendant for the acts of Cashan,
who was employed by the defendant's servant, and in reference
to the burden of proof as to Cashan's agency.

IV. There was no evidence to show any authority from the
defendant for the employment of Cashan.    Cashan was not the
agent or servant of the defendant, and, therefore, the defendant
is not liable for Cashan's negligence.

V. The weight of evidence is in favor of the theory that Cashan
threw the ice or snow which struck Warner.    That question
should have been distinctly submitted to the jury as requested.

*William Bloomfield,* for the respondent.

I. That portion of the charge covered by the exception—

" that there being no particular instruction as to manner, the servant was at liberty to do it in the ordinary way, and to employ assistance, if necessary, and the defendant was liable for the work being negligently done "—was proper and legal. The defendant was liable for the negligence of his servant, whether the act was done in an ordinary or unusual manner, provided it was not wilful. 1 Blacks. Com. 431; 2 Kent's Com. 259 and 260, (marg. paging.)

II. The act was negligent, as charged by the judge. There was no conflict of testimony on this subject; and there was no misdirection. Graham on New Trials, 301, 317; *Woodbeck* v. *Keller*, 6 Cow. 118; *Dean* v. *Hewett*, 5 Wend. 257.

III. The sixth exception is not warranted by the charge. The judge charged, in effect, that Warner had a right to travel on the sidewalk, and that in the absence of any proof of notice or warning, negligence could not be presumed on his part—which was proper. The act complained of, being dangerous to human life, notice should have been proved by defendant. *Loomis* v. *Terry*, 17 Wend. 498, 499.

IV. The judge properly refused to charge with respect to the propositions of the defendant otherwise than as he did charge. 1st. The money received on the policy of life insurance should not have been deducted from the amount of pecuniary injury resulting from the death of Warner, as maintained in the first proposition. *Clark* v. *Blything*, 2 B. & C. 254; *Mason* v. *Sainsbury*, 3 Douglass, 60; *Yates* v. *White*, 4 Bingh. N. C. 272. 2d. The remaining propositions of the defendant were erroneous. *a.* The answer admits that the snow was cleared off by the direction of the defendant, and by his agent. *b.* The defendant, not having parted with the control of the work, was liable for the negligence of Cashan acting in aid of and under the direction of his servant. *Bush* v. *Steinman*, 1 Bos. & Pull. 404; *Randleson* v. *Murray*, 8 A. & E. 109; *Stone* v. *Cartwright*, 6 T. R. 411; *Sleath* v. *Wilson*, 9 Carr. & P. 607; *Booth* v. *Mista*, 7 Carr. & P. 66.

By the Court, BRADY, J.—This action was brought to recover

five thousand dollars damages, alleged to have been sustained by the negligence of the defendant's servant, which resulted in the death of William H. Warner, the plaintiff's intestate. On the trial it appeared that the defendant, on the day of the death of Mr. Warner, directed his servant, Michael Fagan, to take the snow off the roof of his (defendant's) house; and that Michael, having gone for the doctor for the defendant's wife, on his return stopped for a man named Cashan, and asked him to go and help him. That Cashan did so, and that they commenced shoveling the snow from the roof, throwing it into the street from the house top. Some of the snow, or snow and ice thus removed, fell upon the head of Mr. Warner, as he was passing along on the sidewalk.

It also appeared that Cashan went upon the roof at the request of Fagan, to oblige him, and that Fagan was unable to state either who threw the last shovelfull before Mr. Warner was killed, or who threw the snow. It also appeared that, at the time Mr. Warner received the injuries from which his death ensued, his life was insured in the Connecticut Mutual Life Insurance Company for the benefit of Jane C. Warner, one of the plaintiffs and the widow of the deceased, for the sum of $2,500, and that $2,400, that sum being the proceeds of the policy, had been paid to her by the insurance company. The cause having been submitted to the jury, the defendant's counsel requested the court to charge:

1st. That if the jury should find for the plaintiff, then, in assessing the damages, they should take into consideration the money received by the widow on the policy of life insurance.

2d. That if the jury should find that the witness Cashan was employed by Fagan without authority from the defendant, and that the injury to Warner resulted from the act of Cashan, and not of Fagan, the defendant was not liable for the acts of Cashan, and the plaintiffs were not entitled to recover.

3d. That there was not sufficient evidence to justify the jury in finding that Cashan was the agent or servant of the defendant, and the defendant was not liable for his acts.

4th. That the burden of proof was upon the plaintiffs to show that the injury resulted from the acts of the defendant or his servant, and if the jury were in doubt as to whether the injury resulted from the acts of Cashan or Fagan, the defendant was entitled to the benefit of that doubt.

5th. That the defendant was not liable in this action for the negligent act of his servant, unless the defendant was privy to that negligence, and directed or knowingly assented to the particular mode adopted by his servant of removing the snow from the roof.

The presiding judge charged the jury that the first question for them to consider was, whether the death of Warner was produced by the wrongful act of the defendant, and that that question necessarily involved the inquiries, how was the death caused, and was it the result of throwing ice or snow from the defendant's roof? The judge then stated that there could not be much question in the minds of the jury on that subject, that the defendant's counsel seemed to have hardly contested it, but that it was for them to determine. To this part of the charge the defendant excepted. The judge also charged that, it appearing from the pleadings that the defendant had directed Fagan to remove the snow from the roof, and that the direction being general, without any specific instructions as to manner, the servant had a right to do it in the ordinary way, and to employ assistance if necessary; and that if, in the performance of that general direction, an injury to any one, or death as in this case, resulted, the defendant was liable to the extent of the injury produced, *provided such injury was the result of negligence.* The defendant excepted to the instruction, that it followed as a matter of law that the direction, being a general one, if any injury resulted from following it, the defendant was liable. Also to the direction, that there being no particular instruction as to manner, the servant was at liberty to do it in the ordinary way. The judge also charged that in this case there could be no doubt that the act itself was wrongful, because no person was entitled to throw any substance upon a public highway, which might in

any manner obstruct it or diminish its use. That it was negligent, because it was an easy matter to station some one on the sidewalk, or in some other way to notify and warn passers by of the danger. The defendant excepted to so much of this part of the charge as stated that the act was negligent, and also to the instruction that, there being no proof of warning to Mr. Warner against going where he was, it could not *from such circumstances* be presumed that he contributed to his death by any negligence on his part. The defendant also excepted to the instruction that there was but one limit to the damages which the jury might give, and that was that they could not give over $5,000 Also to the instruction that the wife would have been entitled to support from Warner during his life, and their child until she arrived at maturity. The court then refused to charge the requests of the defendant, hereinbefore mentioned, further than they were embraced in the charge made. To such refusal, as to each and every of the defendant's propositions, the defendant excepted.

We have thus presented for our consideration, and in a mode not well designed to facilitate the labors of review, an array of exceptions. It will be necessary to take them up in order, and to see either how far they are sustained by rules of law, or negatived by some feature of the charge to which they relate. In *Mason* v. *Sainsbury, &c.*, (3 Douglass, 61), the action was against the Hundred, under the statute, (1 Geo. I., ch. 5, § 6), to recover damages sustained by the demolition of a house in the riots of 1780. The plaintiff had been insured, and his loss was paid by, and the action was brought for the benefit of, the insurance company. The plaintiff had a verdict, and the verdict was sustained. Lord MANSFIELD said: "The case is clear; the act puts the Hundred, for civil purposes, in the place of trespassers; and upon principles of policy, as in the case of other remedies against the Hundred, I am satisfied that it is to be considered as if the insurers had not paid a farthing." In *Clarke* v. *The Inhabitants of the Hundred of Blything*, (2 B. & C. 254), the action was brought for satisfaction and amends for certain stacks

Althof v. Wolf.

of hay and corn which had been wilfully burned in the Hundred by some person unknown. It appeared on the trial that the plaintiff had been insured, and had received the amount of his loss. He had a verdict, and the verdict was sustained. It will be observed that in this latter case the action was not brought by the insurance company or for their benefit. And so in *Yates* v. *Whyte*, (4 Bingham N. C. 272), the action was brought to recover damages sustained by the plaintiff by reason of the defendant's vessel having run foul of the plaintiff's vessel, by and through the carelessness and mismanagement of the defendant. The plaintiff had a verdict. The underwriters had paid the plaintiff the sum expended in repairs, and that sum was deducted by the arbitrator to whom the matter was left, from the damages sustained by the plaintiff. This was held to be erroneous. TINDAL, Ch. J., said: If the plaintiff cannot recover, the wrongdoer pays nothing, and takes the benefit of *a policy of insurance without paying the premium.* BOSANQUET, J., said: "How could the trespassers have availed themselves of this satisfaction? Could they have pleaded it by way of accord and satisfaction? It was not paid as a satisfaction for a trespass, and the facts of the case would not have supported such a plea."

On principle and authority, then, the jury should not take into consideration the money received by the plaintiff, Jane C. Warner, from the insurance company. But, without reference to any adjudicated case, there are principles springing from the relations of the parties, and the statute creating the right of action in favor of the plaintiffs, which forbid the consideration of any benefit elsewhere received. Jane C. Warner was entitled to the whole amount of the policy of insurance. It was for her benefit alone; and it was secured by the payment of a premium to which the defendant did not contribute. The benefits growing out of the right of action here sought to be enforced, are not given to her by the statute, but are given to the widow and next of kin, and do not arise upon any common law liability. They are, therefore, *res inter alios acta.* The case is very different from that which would be presented for an injury to a chattel, and

it rests upon a statute, the object of which was to punish the wrongdoer who by his carelessness destroyed life. There is no privity between him and the insurance company, and the insurance company cannot repair the injuries done by the defendant. They cannot restore to the widow and next of kin of the deceased, the society, advice and protection which he could have afforded them, aside from the pecuniary losses incident to the deprivation which his death occasioned, and thus, either by analogy, or on principle even, the doctrine that an insurance company could be substituted for the deceased in this action, as in the case of *Mason* v. *Sainsbury*, could not apply to this action. But, however that may be, the judge was clearly right in refusing to charge the first of the defendant's requests. The second request was not authorized by law. Fagan was engaged in removing the snow from the defendant's house and by his express direction, when Mr. Warner was killed. It is true that Fagan had asked Cashan to help him, but this does not change the defendant's responsibility. It is said, by Blackstone, (Vol. 1, p. 431, marginal paging), that "a master is chargeable if any of his family layeth or casteth anything out of his house into the street or common highway, to the damage of any individual, or the common nuisance of his majesty's liege people: for the master hath the superintendence and charge of all his household;" and the following cases illustrate the doctrine that where the master has intrusted a servant with the performance of a service, it is no answer, in an action brought to recover damages resulting from the manner in which the service is performed, that the servant acted improperly in the discharge or performance of it.

The master must respond, because he has put it in the power of the servant to do the injury. *Bush* v. *Steinman*, 1 Bos. & Pull. 404; *Randleson* v. *Murray*, 8 A. & E. 109; *Stone* v. *Cartwright*, 6 T. R. 411; *Sleath* v. *Wilson*, 9 Carr. & P. 607; *Booth* v. *Mista*, 7 Carr. & P. 66.

In the last case the defendant was held liable for injuries to the plaintiff's cabriolet, resulting from the negligent manner in which defendant's cart was driven, although it appeared that the

defendant's servant was not driving at the time, but had intrusted the reins to a stranger who was riding with the servant, and not in the service of the defendant.

This is not the case of an independent employment, like that in *Blake* v. *Ferris*, (1 Seld. 48). The defendant did not part with the control of the work. Fagan was his coachman, and was directed to remove the snow. He was intrusted with the duty and the manner of doing it; no specific directions having been given. He sought the aid of another, with whom he acted in concert, both being engaged at the same time, and acting in the same manner, in removing the snow. Aside from this, the evidence of Cashan, if true, and the defendant cannot gainsay it, shows that the injury was not caused by any act of his; but however that may be, upon the principle established by the cases referred to, it was wholly immaterial whether the death of Mr. Warner was occasioned by either Fagan or Cashan, and therefore the second request was not well made. This also embraces the third and fourth requests, because they relate to and are a part of the theory presented by the second request—that Cashan may have caused the death of Mr. Warner, and was not the servant, or in the service of the defendant. It also embraces the second and third exceptions to the charge, which were taken independently of those founded on the requests. The fifth request is also embraced in the legal rule which has been stated. The employment and direction was general, and it has never been held necessary to show that the master was privy to the negligence of his servant, nor has it ever been engrafted as one of the principles of law, by which the relation of master and servant are governed, that the manner in which a service is performed on a general direction, must be shown to have been assented to by him, in order to charge the master for injuries occasioned by such mode or manner. The counsel for the defendant has not presented any authority bearing upon such a proposition. The fifth request was, therefore, properly refused. The sixth exception to the charge was not well taken. The jury having determined that the deceased died of the inju-

ries received through the negligence of the defendant or his ser-
vants, the only limit to their award of damages was the sum of
$5,000. The statute has, in effect, so declared. It declares that
the jury in every such action may give such damages as they
may deem a fair and just compensation, not exceeding $5,000.
Laws 1849, p. 388.

The first, fourth, and fifth exceptions to the charge were
not well taken. The judge said there could not be much
question in the minds of the jury as to the cause of the death
of Warner, but left that fact to the jury to determine. This
was not a misdirection, or erroneous. Whatever may have
been the opinion of the judge, the fact was left to the determi-
nation of the jury. The first exception was to this part of the
charge. The judge also said that the act was negligent, because
it was an easy matter to station some one on the sidewalk, or in
some other way notify and warn passers by of the danger; and
further, that no doubt could be entertained as to the right of the
deceased to travel on the sidewalk, and there being no proof of
any notice or warning to him against going there, it could not,
under such circumstances, be presumed that he contributed to
his death by any negligence on his part.

The act complained of was done by the defendant or his ser-
vant, and was negligent. There was no conflict on the subject,
and the charge of the judge was warranted by law. *Woodbeck* v.
*Kelly*, 6 Cow. 118; *Dean* v. *Hewett*, 5 Wend. 257; Graham on
New Trials, 301, 317.

The act complained of was dangerous to human life, and
notice should have been given. *Loomis* v. *Terry*, 17 Wend.
498, 499. No such precautions were in fact taken. There was
no evidence offered thereto, and nothing appears in the case jus-
tifying a pretence thereof. As stated, therefore, the first, fourth,
and fifth exceptions were not well taken. I do not understand
on what basis the defendant placed an exception to the instruc-
tion, that the wife of Mr. Warner and his child would be entitled
to support from him, the former during his life, and the latter
until she attained the age of 21 years. The judge, at the same

time, said that Mr. Warner would be entitled to their earnings, and this was a correct statement of the legal rights and liabilities growing out of the relations of husband and wife and parent and child, and was a proper consideration in reference to the question of damages. The exception was, therefore, not well taken. I think it can be shown that some of the exceptions to the charge stated and considered, were not warranted, taking the whole charge together, but I deem it unnecessary, the exceptions having been disposed of standing alone. There remains one exception to be considered. The defendant offered to show that a former coachman of his, in 1854, under a similar direction to take snow from the roof, without instructions as to where it should be thrown, threw it into the defendant's yard. The evidence of that incident would doubtless furnish an excellent recommendation to the former coachman; but nothing bearing upon the issue involved. Proving that a former servant did a similar service correctly, does not seem to be relevant to the question whether another servant did it carelessly. It is my opinion, therefore, that the offer was properly rejected.

On a consideration of the whole case, and for the reasons assigned, I think it clearly appears that there is nothing in it which would justify us in disturbing the verdict rendered. The circumstances under which Mr. Warner was killed present, in legal contemplation, no mitigating features. In the full possession of his faculties, and while in the exercise of a lawful right, he was suddenly, and without fault on his part, stricken down by an act not only grossly careless, but exhibiting, in my judgment, a disregard of human life deserving severe condemnation. In traversing the highway, the deceased was under no obligation to anticipate or expect the act by which his death ensued. He was not bound to look aloft to see that no missile or substance cast from the housetops, or any other elevation, should do him bodily harm, and although the defendant did not cause the death by his own hand, this case may be said to illustrate the wisdom of the legislature in providing the redress granted. Whatever may be our sympathies for the man who

is unfortunate enough to suffer by the negligence of his servant, there are other and higher considerations which must control, and yield us pleasure when employed in vindicating the rights of society to perfect security in the enjoyment of life and property.

Judgment affirmed.