CESRINA FRASER, adm'x, and GEORGE C. BINGHAM, adm'r &c., *vs.* LEMUEL N. FREEMAN, impleaded with others.

If a person asks another, already in his service, to assist him, and to do it by fighting an adversary named or known, in order to accomplish some purpose, though lawful in itself, and connected with the service, he must respond for the act of the servant, because he has enlisted him to commit acts which otherwise might be held to be willful, and without the line of duty or the service for which he was employed.

The defendant, claiming a right to use the basement of premises occupied by another, and to approach and obtain access to it through such premises, proceeded to assert such right, although advised that the occupant disputed the right, and would resist; and in order to accomplish his design, called to his assistance two porters in his employ, asking one of them to go in with him and "fight it out;" all being armed, one with a crowbar, another with a hammer, and a third with a pistol. In the course of a fight between the parties, which ensued, the occupant of the premises was killed by a pistol shot from one of the porters.

*Held*, 1. That the defendant and his servants were tort-feasors, being engaged in an effort to obtain by force what should have been accomplished through the tribunals of the law.

2. That the defendant having initiated the disturbance, and asked his servants to assist him therein, was responsible for the consequences; and that the act of his servant, in firing upon the deceased, was, even if willful, but one of the consequences of the enterprise in which the servant had engaged at the solicitation of the defendant.

3. That if the act complained of was the possible result of the employment, the master must answer for the act done by the servant.

Under such circumstances an action can be maintained by the administrators of the deceased, against the master, under the statutes of 1847 and 1849, to recover damages for causing the death of the deceased, by the act of the servant.

APPEAL, by the defendant Freeman, from a judgment entered upon the verdict of a jury.

The action was brought against Lemuel N. Freeman, Michael Ryan and Thomas Mullady. The complaint alleged that on or about the 6th day of July, in the year 1866, at the city and in the State of New York, the defendants made an assault upon James L. Fraser, and then and there struck him upon the back part of the head and neck a great many blows, with a piece of iron commonly called

Fraser *v.* Freeman.

a "crowbar," and also then and there shot the said James L. Fraser, with a pistol loaded with powder and a ball, in the body of him the said James L. Fraser, thereby greatly wounding and injuring him; and that by reason of the said striking, shooting and wounding of him, the said James L. Fraser, as aforesaid, he, the said James L. Fraser, afterwards, and on or about the 7th day of July, in the year and at the place last aforesaid, died, and that the said death of the said James L. Fraser was caused by the wrongful act, neglect or default of the defendants, without any wrongful act, neglect or default whatever, on the part of him the said James L. Fraser.

2d. The plaintiffs further alleged, that the said James L. Fraser, at the time of his death, left him surviving his wife, the said Cesrina Fraser, and five infant children, respectively under the ages of twenty-one years, all of whom are now alive, and are his widow and next of kin; and at the time of his said death he, the said James L. Fraser, was most comfortably and honorably supporting his said wife and infant children; and that by reason of his aforesaid death, occasioned as aforesaid, his wife and children have sustained damages and injuries to the sum and amount of $5000, as the pecuniary injuries resulting from his said death.

3d. The plaintiffs further alleged, that on or about the 25th day of July, 1866, letters of administration upon the goods and chattels and personal estate and credits of the said James L. Fraser, in due form of law, were duly granted unto the plaintiffs, who then became and ever since have been and now are the administratrix and administrators of all and singular, the goods and chattels, and personal estate and credits, in due form of law, of the said James L. Fraser, as aforesaid, and are entitled, as such, to have and maintain this action.

Wherefore the plaintiffs demanded judgment against the

defendants for the sum of $5000 damages, together with costs and disbursements.

The defendant Freeman, only, appeared and answered. By his answer, 1st. He denied the material allegations of the complaint. 2d. For further answer and second defense he alleged, that at the time mentioned in the complaint, of the alleged assault and shooting of said Fraser, he, the said Fraser, was a tenant of, and holding a lease from, this defendant and Edwin R. Robertson, (then and now partners, doing business in said city, under the firm name of Freeman & Robertson.) That said lease was for the first or ground floor of the building No. 186 Fulton street, in the city of New York, and the basement and sub-basement was then, and still is, retained by, and in the use and occupation of, the defendant's firm. That in and by said lease, " the parties of the first part," to wit, the said Freeman & Robertson, " reserve the right of way to and from the basements; also one of the vaults during business hours; also the use of the water closet." That on said 6th day of July, 1866, the defendant, with his porter, the defendant Mullady, and another porter, the defendant Ryan, during business hours, to wit, at about 10 o'clock A. M., went to said premises No. 186 Fulton street, for the purpose of placing certain machinery, the property of the defendant's firm, in said basement. That said James L. Fraser wrongfully and unlawfully refused to allow, and prohibited and resisted this defendant and his employees, the co-defendants, from passing through said right of way, and entering their said premises, and to their merchandise therein, and locked and bolted the door leading to said basement, the said door being in said right of way, and the only entrance to the defendant's said premises, and a large amount of merchandise belonging to the defendant's firm, and refused to open the same on the repeated demand of this defendant, and after the defendant had told said Fraser that he would break the

lock open if he did not open said door. That all the injury said James L. Fraser received at the hand of this defendant was very slight, and in nowise caused or contributed to his death, and was the result of, and was caused and produced by, the wrongful act, neglect and default of the said James L. Fraser, as aforesaid, in refusing to allow, and forcibly resisting and violently assaulting this defendant, and preventing his entering his said premises, as this defendant and his co-defendants had a perfect right to do, without any manner of let, suit, trouble or hindrance of or from the said James L. Fraser, or any other person or persons whomsoever. And that said only injury received by said James L. Fraser from the defendant, occurred, in the first instance, upon said Fraser striking this defendant, and rushing in between him and said basement door, while this defendant was in the act of striking at said door with a crowbar, for the purpose of breaking the lock and entering his said premises, and getting admission to his merchandise as aforesaid, he, the said Fraser, then receiving one slight blow from said crowbar, on his left shoulder blade; and on the only other occasion, when immediately after said first blow this defendant retreated across said store, and facing said Fraser, and pursued by him and a man named Abial Swift, a barkeeper in the employ of said Fraser, said James L. Fraser made a quick movement with his right hand into the right hand pocket of his, said Fraser's pants, with intent, as the defendant then and now believes, to draw a pistol or knife, with which to shoot or stab this defendant, and this defendant believing himself in great peril to life and limb, and acting solely in self defense, stooping, gave said James L. Fraser a pushing blow with the side of said crowbar, extending upwards and crosswise, and about one foot along the back of said Fraser, and pushing him towards the street door, but not knocking him down. That immediately thereafter a pistol shot was fired by some

person to this defendant unknown, and which this defendant supposed at the time was fired by said Fraser at him, but which, as shortly afterwards the defendant was informed, had struck said James L. Fraser, and from the effects of which said shooting, solely, as this defendant is informed, believes and alleges, said James L. Fraser died, on the 7th day of July, 1866. That said shooting was not done by the procurement, authority, connivance or consent of this defendant, and neither the said act of shooting, nor the death of said Fraser, proceeded from, or was caused by, the wrongful act, neglect or default of this defendant.

The action was tried before Justice Cardozo and a jury. When the plaintiff rested, and again at the close of the defendant's testimony, the defendant's counsel moved to dismiss the complaint, upon the following grounds:

1st. That there is no evidence of negligence or improper conduct on the part of the defendant Freeman.

2d. That there is no evidence tending to show that Mullady acted by the authority or direction of Freeman.

3d. That there is no evidence making Freeman responsible for any act of Mullady.

4th. That it appears by the testimony that Fraser was guilty of contributory negligence or misconduct which contributed to his death.

5th. That it appears also by the evidence, either that Mullady willfully and maliciously killed Fraser, in which case Freeman is not responsible for his act, or that if Mullady is to be believed, he killed Fraser in justifiable self defense, believing himself to be in danger of great bodily harm, and that in that event, there has been no improper conduct, and there can be no verdict against Freeman.

The motion was denied by the court, and the defendant excepted.

The jury found a verdict in favor of the plaintiffs, for $5000 damages, and judgment being entered thereon, the defendant appealed.

Fraser v. Freeman.

*Anthon & Leeds*, for the appellant.

I. The motion to dismiss the complaint should have been granted. 1. There was no evidence that the death of Fraser was "caused by the wrongful act, neglect or default" of Freeman. The "glance blow" given by Freeman did not cause or contribute to the death. (*Wilds* v. *Hudson River Railroad*, 24 *N. Y. Rep.* 430.) Fraser was killed with a pistol shot fired by the witness, Mullady, when Freeman was otherwise employed, and Fraser going out of the door, and when Mullady had as yet taken no part in what was done. Mullady swears that he killed Fraser because he thought he had a weapon, and "because he believed his life and personal safety was in danger" from Fraser's attack on him, and "that unless he was stopped some way he would injure him;" that he "did it" (the killing) to defend his own person and to protect Mr. Freeman; he did it with that intention at that time." The killing of Fraser was therefore literally and morally, in act and intention, the deed of Mullady. Freeman shared neither in the act nor the motives which led to it. (*Shorter* v. *The People*, 2 *N. Y. Rep.* 193.) 2. There is no evidence of any order or direction of Freeman to Mullady to kill; nor is there any evidence of employment for any purpose; Freeman told Mullady that he did not want him, as he was a coward, and then Mullady followed voluntarily, and did nothing but remain at the door and shoot Fraser as he came out, because he thought that he, Fraser, intended to kill him. His employment was not calculated to lead to strife or danger. (*Thomas* v. *Winchester*, 6 *N. Y. Rep.* 397. *Mali* v. *Lord*, 39 *id.* 381.) 3. The act of Mullady, either as an act of self defense or a wanton murder without justification, was wholly without the scope of Mullady's employment. (*Vanderbilt* v. *Richmond Turnpike*, 2 *N. Y. Rep.* 479. *Weed* v. *Panama Railroad*, 17 *id.* 364. *Hibbard* v. *N. Y. and Erie Railroad*, 15 *id.* 446. *Vedder* v. *Fellows*, 20 *id.* 126. *Mali* v. *Lord*, 39 *id.* 381.) 4. Free-

man was guilty of no improper violence. He had the right of way, and the passage he attempted was the only access for persons. Freeman and Fraser were strangers. Waters was the lessee, and no previous resistance had been made to the exercise of the right of way. The resistance of Fraser and Waters was desperate, dangerous and premeditated, with a view to producing strife. In the effort to maintain his right of way he was successful, and Fraser's death occurred in a new trespass committed by him in fastening the door again, and resisting when all difficulty was over. Freeman was not bound to anticipate illegal resistance. (*Newson* v. *N. Y. Cent. Railroad*, 29 *N. Y. Rep.* 383.) 5. Fraser was guilty of contributory negligence. (*a.*) In resisting unlawfully the lawful entry of Freeman. (*b.*) In renewing that resistance after the entry and way were in use by Ryan. (*c.*) If the story of Mullady were true—and the plaintiff cannot deny it—that Fraser either assailed him with a knife, or so acted as to induce Mullady to think so, the case is one where, as Strong, J., says, "both being guilty of negligence, they were the common authors of what immediately flowed from it, and it was not a consequence of the negligence of either." (*Button* v. *Hudson River Railroad*, 18 *N. Y. Rep.* 248. *Johnson* v. *The Same*, 20 *id.* 65. *Colgrove* v. *New York and H. Railroad, Id.* 492.) (*d.*) If Mullady was deceived into the belief of Fraser's attack, and so killed him, his delusion is an accident for which his employer is not liable. If his testimony is false, there is no evidence to charge the defendant. 6. It is submitted that the dilemma presented by the motion to dismiss is inevitable. (*People* v. *Clark*, 7 *N. Y. Rep.* 385. *People* v. *Sullivan, Id.* 396. *Shorter* v. *People*, 2 *id.* 193.) (*a.*) If Mullady, as he swears, killed Fraser solely because he believed that he was rushing at him with a knife, and must be stopped or he would be killed; then Mullady was *justifiable* in his act, and his employer could not be guilty by his servant's *justifiable* act. (*b.*) If Mul-

lady is not to be believed, and the other witnesses for the plaintiff are, then the killing of Fraser was a brutal, willful murder, done while no conflict was pending, upon a retreating man, in accordance with no direction of Freeman, being the only thing done by Mullady that whole day. 7. The plaintiff must show both negligence, default or improper conduct in the defendant, and entire freedom from negligence on his own part; for failure in either respect the court will nonsuit, and it is error not to do so. It is no question of relative negligence; the plaintiff must be absolutely free. (*Creed* v. *Hartmann,* 29 *N. Y. Rep.* 591. *Wilds* v. *Hudson River Railroad, Id.* 315. *Owen* v. *Hudson River Railroad,* 35 *id.* 516. *Johnson* v. *Hudson River Railroad,* 20 *id.* 65. *Wilds* v. *Hudson River Railroad,* 24 *id.* 430. *S. C.,* 29 *id.* 315. *Deyo* v. *N. Y. Cent. Railroad,* 34 *id.* 9. *Hance* v. *Cayuga and S. Railroad,* 26 *id.* 428. *Steves* v. *Osw. and Syr. Railroad,* 18 *id.* 422. *Haring* v. *N. Y. and Erie Railroad,* 13 *Barb.* 9. *Ernst* v. *Hudson River Railroad,* 35 *N. Y. Rep.* 9. *Gonzales* v. *N. Y. and Harlem Railroad,* 38 *N. Y. Rep.* 440.)

II. The judge erred in not dismissing the complaint at the close of the proof. The only cause of action shown was against Mullady, the slayer of Fraser, and Waters, who planned the collision in which he was killed.

III. The court erred in refusing the third request to charge, viz., that there was no proof of any direction, procurement or authorization of Fraser's death, by Freeman. 1. There is proof that Freeman did not know him; no proof that he sought his death, that he expected to meet him or any one but Waters at the store in Fulton street, or anticipated any conflict. 2. Mullady's testimony, that Freeman said to him, "I want you to stand by me and fight it out," is immaterial, in view of his declaration that he killed in self defense. "I thought Mr. Fraser was running on me with a knife, and under no other circumstances would I have

acted ·as I did." 3. If the jury disbelieve this part of Mullady's story, they cannot credit the rest, and there is no proof even of the words "follow me," &c. 4. If the jury believe the testimony of Mullady, apprehension and desire to defend himself were the only motives of the killing; if they do not, then they must find it a willful murder; and in either case the killing was from reasons not controlled by Freeman, and inconsistent with direction by him. (*McManus* v. *Crickett*, 1 *East*, 106. *Wright* v. *Wilcox*, 19 *Wend.* 343. *Croft* v. *Alison*, 4 *Barn. & Ald.* 590. *Lyon* v. *Martin*, 8 *Adol. & Ell.* 512.)

IV. The court erred in not charging the whole proposition of the tenth request, viz., that when a man engages in a dangerous enterprise he accepts the ordinary risks, and is bound to foresee and submit to the consequences usually attendant upon it. (And if the jury believe that Fraser, after the difficulty of the 5th of July, deliberately undertook to resist Freeman's way by force, he, Fraser, is responsible for all the consequences, and the jury must find for the defendant.) The general proposition, that where a man enters upon a dangerous employment he assumes all its risks, is conceded. (*Curran* v. *The Warren Co.*, 36 *N. Y. Rep.* 153.)

It was right to add to this that to plan in advance a breach of the peace, a forcible resistance to a legal, peaceful right of way, was an entry, if the plan were carried out, upon a dangerous, unlawful employment, and this was the effect of the request refused. In a conflict brought about between Freeman and Fraser, by the act of the latter, neither could recover. (*Corwin* v. *N. Y. and Erie Railroad*, 13 *N. Y. Rep.* 42.)

V. The court erred in refusing the eleventh, thirteenth and twenty-first requests to charge. The charge concedes that Freeman had the right of entry—that Fraser had no right to resist by force. How then can he be free from negligent or improper conduct in doing an unlawful act? If one be killed in a voluntary prize fight, or as he is

escaping from committing a felony or misdemeanor, is he free from contributory fault? Any illegal act tending to the death is contributory negligence. ( *Tonawanda Railroad* v. *Munger*, 4 *Comst.* 349.) It is not a question, as the judge seems to have supposed, of sufficiency or excess of force, but simply whether or not the plaintiff was guilty of negligence or illegal conduct, without which the death would not have occurred. ( *Wilds* v. *Hudson River Railroad*, 24 *N. Y. Rep.* 430. *Clark* v. *Kirwan*, 4 *E. D. Smith*, 21. *Deyo* v. *N. Y. Central Railroad*, 34 *N. Y. Rep.* 9. *Mangam* v. *Brooklyn Railroad*, 36 *Barb.* 230. *Button* v. *Hudson River Railroad*, 18 *N. Y. Rep.* 248.) It is submitted that where one commits a trespass by preconcerted malice, with intent either to deprive another of his rights or to raise a fictitious and oppressive litigation, law, policy and morals require that he should be considered a wrongdoer, as entering upon a dangerous employment, and not entitled to recover for injuries sustained in the riot of his own causing. Contributory fault is not so construed as where no proof of negligence of the defendant saved from nonsuit the plaintiff who suffered his cattle to stray. ( *Munger* v. *Tonawanda Railroad*, 4 *N. Y. Rep.* 349. *Owen* v. *Hudson River Railroad*, 35 *id.* 516. *Wilcox* v. *Rome and Watertown Railroad*, 39 *id.* 358.)

VI. The court erred in refusing the fourteenth request to charge, viz., that if the jury believe that Mullady fired the pistol shot which caused Fraser's death, with the premeditated design to effect his death, the defendant Freeman is not liable for his act. 1. There is no evidence that Freeman intended to have Fraser killed, or employed Mullady to kill him. 2. If, therefore, Mullady killed him "with the premeditated design to effect his death," there is no question of agency between Freeman and Mullady; the crime of Mullady is murder, and the relations of Freeman, Waters, Bingham, and all who brought about the meeting to the offense, are merely accidental.

VII. The judge erred in refusing the fifteenth and sixteenth requests to charge, that if the killing was under the circumstances which the law terms " in self defense," the defendant was not liable. (3 *R. S.* 939, § 3, *5th ed.*) 1. Because such homicide is by the terms of the law "justifiable," and cannot make either actor or promoter guilty. 2. Because the ingredients of a justifiable homicide in self defense are all matters foreign to Freeman. (*Middleton* v. *Fowles*, 1 *Salk.* 282.) 3. Because it is absurd to say that Fraser was guilty of conduct bad enough to *justify* Mullady in killing him, and yet not guilty of contributing negligence in this action.

VIII. The court erred in refusing to charge that if Mullady acted in the heat of passion, under the circumstances constituting manslaughter in the third degree, the defendant was not liable. Such a homicide would be from motives wholly personal to Mullady, and for which no one else could be made responsible.

IX. The court erred in refusing to charge that " the act of Fraser, in preventing Freeman from going into the basement, was negligence or improper conduct on his part, which contributed to his subsequent injury ;" it was manifestly such contributory negligence, and should have taken the case from the jury.

X. The court erred in its charge at folio 395 of the case. 1. Because it assumes and suggests to the jury that the premises in question were " Mr. Fraser's saloon," which is untrue in fact, as the lessee of the premises was John H. Waters. 2. Because it assumes a relation between " Freeman, or those acting with him," which is one of the vital points in the case. 3. Because it is not law or good morals, that one can be " a trespasser and a wrongdoer," and yet free from contributory fault in the events resulting from his trespass and wrong doing. 4. Because it takes away from the jury the entire question of the motives which influenced Mullady in killing Fraser, as though

Freeman himself had killed, and also assumes the same law as applicable to force during the assertion of the right of way, and after that was all done, and also takes from them, and itself refuses to pass upon, the question of contributory negligence. 5. There is no question of whether or not "Freeman was authorized to kill," and the jury was by this language deceived. Force sufficient or excessive is not the question; there can be no recovery at common law, and under the statute the question is only "contributory fault," without reference to the fault of the defendant. (*Wilds* v. *Hudson River Railroad*, 24 *N. Y. Rep.* 430.) 6. The defendant is not liable for excessive violence of Mullady, though he were his servant. (*Hibbard* v. *N. Y. and Erie Railroad*, 15 *N. Y. Rep.* 466.)

XI. The court erred in the charge at folio 397. 1. If it was negligence or fault in Freeman not to "resort to the courts," it was surely contributory negligence or fault in Fraser to resist by force, with predetermined malice, the lawful entry of Freeman on premises not belonging to Fraser, but Waters. 2. Whatever "attempt at force" was made was over when Mullady fired the pistol and Fraser was killed, after the right of way was fully asserted, and as he was leaving the store. 3. The court erred in charging that Freeman was as responsible as though he had fired the pistol himself, thus withholding from the jury the question of self defense; if that plea saves Mullady from the guilt of murder, it must save Freeman. He is *no more* responsible than was Mullady, *under the circumstances as he swears to them*, i. e. in imminent danger, thinking that Fraser was rushing at him with a knife, and would kill him if not stopped.

XII. The charge that the "mere refusal was not an act contributing to the injury," was error in a case where the entry was lawful; the deceased not the owner of the lease, but a mere stranger; the "refusal" accompanied by violence, and the result of a precontrived plot. The evidence

was not that Fraser refused access, but that he forcibly resisted it, after it had been peacefully secured, barring the door and assaulting, upon force being used *on the door of another man's premises*. If a collision is produced by one he is in fault, though the first blow be struck by another. (*Bull. N. P.* 18.)

XIII. The verdict is against evidence, and the damages excessive. (*Tilley* v. *Hud. Riv. Railroad,* 29 *N. Y. Rep.* 260. *Franklin* v. *S. E. Railroad,* 3 *Hurls. & Nor.* 212. *Duckworth* v. *Johnson,* 4 *id.* 652. *McIntyre* v. *N. Y. Central Railroad,* 37 *N. Y. Rep.* 287. *Matteson* v. *The Same,* 35 *id.* 487.)

*Chauncey Shaffer,* for the respondents.

*By the Court,* BRADY, J. The death of the deceased was the result of a determination on the part of the defendant to use the basement under the premises occupied by the former, and to approach and obtain access to it through such premises, which he had an apparent right to do. This determination, however, was formed and attempted, although the defendant was advised that the deceased disputed his right to do so, and would resist. In order to accomplish his design, he called to his assistance Ryan and Mullady, and asked the latter to go in with him and fight it out. The three were armed. The defendant had a crowbar, Ryan a hammer, and Mullady a pistol. The defendant knew this. He led the expedition, which meant force, if force was necessary, regardless of the law, which required that he should desist from enforcing a right, if such a proceeding would lead to a breach of the peace. He nevertheless carried out his intention. He was advised by Ryan that the deceased had closed the door leading to the basement, and would not let him pass, before he entered, followed by Ryan and Mullady. He approached the deceased, who was seated, and engaged in making some preparation for his day's business. He

wanted to go down to the basement. The deceased, acting upon the advice of his landlord, as the defendant knew, denied his right to do so, and remonstrated with him, telling him that he could not pass that way. He said he would, and raising the crowbar with both hands, struck with it at the head of the deceased, but the latter, by a movement of his head, averted the full effect of the blow. "It came down," nevertheless, to use the language of one of the witnesses, and one entirely disinterested, "on the back of his head and on his shoulder, and made him stagger." The deceased then started for the front door, and in a position indicating that he was injured, and when near it was shot by Mullady. Mullady was not in danger from the deceased, although he may have thought so, as appears from his own statement, and he surely was not at all in danger, as the evidence disclosed. What induced him to fire upon the deceased, unless it was in harmony with the general design of "fighting it out," for which he was invited to enter the deceased's place of business, and which project the defendant initiated, it is difficult to conjecture. He said that he did it because the deceased was approaching him, having a knife, as he supposed, and also that he did it to protect the defendant and his property, and for no other purpose; that he never had anything against the deceased. It is true that although what he said in exculpation of what seems to have been a wanton and unjustifiable act, may be justly regarded with great suspicion, yet as he was one of the defendant's employees in a deliberate plan to accomplish his purpose by unlawful means, the latter cannot reasonably complain if the jury, as they seem to have done, placed confidence in the statement given by him.

The theory of the defense, in reference to the killing of the deceased, seems to have been that the defendant, although he put Mullady in a position where he might use violence on his behalf, and where he was invited to

employ it, is nevertheless not responsible if Mullady did any willful act by which the life of the deceased was taken ; and we are asked to entertain propositions in reference to the act of Mullady, in shooting the deceased, which are of the criminal law, and properly applicable to trials for murder or manslaughter. The plaintiff's right to recover does not rest on such distinctions. The defendant and his servant were tort feasors. They unitedly engaged, and engaged deliberately, in a determination to obtain by force, what should have been accomplished through the tribunals of the State.

When the defendant was advised by the deceased that he could not be permitted to do what he designed to do, it was his duty to retire at once. He did not do so. On the contrary, he undertook, against the will of the deceased, and by force, to carry out his design, and by that proceeding became a wrongdoer. He invited the fight which he asked Mullady to see out, and initiated a disturbance, the consequences of which, as far as the law may allow, should be visited upon him.

Accepting the statement of Mullady, one of the results of the defendant's violence was an impression in his mind, arising from the conduct of the deceased after he was assailed by the defendant, that he was in danger of bodily harm, and if such was the fact, his act in firing upon the deceased was, even if willful, but one of the consequences of the enterprise in which he had engaged at the solicitation of the defendant. He went on to fight it out. He went on with a pistol which the defendant knew he had, and violence by him, either by the use of the pistol or any other weapon, in the melee which the defendant created, was, in my judgment, so far as the defendant's liability in this action is concerned, fully within the employment of Mullady when used against the deceased, whose vanquishment was the object of the defendant. We cannot limit the responsibility of the master under circumstances such

as are disclosed by the evidence herein, to any more precise extent than will be defined by declaring that if the act complained of was the possible result of the employment, he must answer for the act done. (*Althof* v. *Wolf*, 2 *Hilt.* 344, *and cases cited. S. C.*, 22 *N. Y. Rep.* 355.) If a person, therefore, asks another, already in his service, to assist him, and to do it by fighting an adversary named or known, in order to accomplish some purpose, though lawful in itself and connected with the service, as in this case, he must respond for the act of the servant, because he has enlisted him to commit acts which otherwise might be held to be willful, and without the line of duty or the service for which he was employed. Whether the deceased was guilty of any negligence, by forcibly resisting the defendant's ingress to the basement, or otherwise, was left to the jury, and found in favor of the plaintiffs. It was clearly not negligent in him to assert in a peaceable manner his rights, actual or presumed, in the absence of evidence showing his assertion to be a mere pretense made, or maliciously declared, with a design to provoke violence. Such elements do not appear in this case.

These conclusions render it unnecessary to comment further upon the testimony in this remarkable case, and from which it appears that the defendant claimed to have "settled" the deceased with the crowbar before he was shot by Mullady, and also to have endeavored to provide for the safety of Mullady from criminal prosecution. The charge of the presiding justice covered the legal propositions involved in this case, and the requests to charge which were granted, gave the defendant the benefit of such distinctions and qualifications as he was entitled to. Those refused were properly denied, and the exceptions taken to such denials are unavailable. The charge was as favorable to the defendant as the facts and circumstances warranted, and one to which no exception has been taken that can enure to his benefit.

The action is brought under the statutes of 1847 and 1849, (*Laws of* 1847, *p.* 575 ; *Laws of* 1849, *p.* 388,) which provide that whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although such death shall have been caused under such circumstances as amount in law to felony. Is there any doubt that had not death ensued, an action could have been maintained against Ryan, Mullady and the defendant, for the trespass committed by them ? They were certainly wrongdoers, and severally liable, if they attempted, by force, to obtain ingress to the basement, which was disputed territory, (*Livingston* v. *Bishop*, 1 *John.* 290; *Rose* v. *Oliver*, 2 *id.* 365 ; *Bishop* v. *Ely*, 9 *id.* 294; *Low* v. *Mumford*, 14 *id.* 426 ; *Whart. Am. Crim. Law*, §§ 2474, 2485;) and that they did so has been established by the verdict of the jury. If the defendant was not justified in entering as he did, with strong hand and by violence, the persons who assisted him could not have been. They had less right than their master or leader, and assumed the consequences of their unlawful enterprise.

In all the views thus taken of this action, it seems to be clear that the defendant was properly charged with the consequences of Mullady's act, as a result of the improper proceeding which he set on foot, and in which he asked Mullady to assist.

I think the judgment should be affirmed.

Judgment affirmed.

[New York General Term, April 4, 1870. *Ingraham, Geo. G. Barnard* and *Brady*, Justices.]