## SUPREME COURT—IN BANCO.

### OCTOBER TERM—1869.

*Hartwell, and Widemann, J. J.*

### THOS. CUMMINS *vs.* WM. SUMNER.

A traveler is not legally liable for damages for COLLISION merely because on the left of the HIGHWAY; it is a question of NEGLIGENCE FOR THE JURY.

In such case, the master is liable for his SERVANT'S negligence in driving, if within the usual scope of employment.

Tort for damages to plaintiff's horse by collision with

Thos. Cummins *v.* Wm. Sumner.

defendant's team. The plaintiff's son was driving the plaintiff's two horse wagon down Fort street, Honolulu, upon the right hand side, and near the corner of King street, the plaintiff's off horse was struck in the breast by the off shaft of the defendant's mule cart. The mule was driven by the defendant's servant, upon the left hand side of the street, and was just turning the corner when the accident occurred. The mule was going at a very slow trot, and the driver attempted to rein him up as soon as he saw the plaintiff's horses. The defendant was not personally present, nor had he authorized his servant to drive thus. The force of the collision was such that the driver was thrown from the cart. A letter of the defendant's, in evidence, admitted that his servant was driving, and there was other testimony to the same effect, but there was no evidence that the servant was specially employed as a driver, or otherwise. The Court instructed the jury that they might infer, in the absence of evidence to the contrary, that the servant was acting within the scope of his employment, and that it was for them to decide whether he used due care, or was negligent in driving around the corner as he did. The defendant's counsel claimed that, under the statute, the plaintiff's only remedy was against the servant, but the Court overruled their motion to dismiss the action on this ground. The jury rendered a verdict for the plaintiff, with $40 damages.

At the request of the defendant's counsel, the judge presiding at the trial reserved the questions of law, and reported the case for the Court, *in banco.*

HARTWELL, J.: This case presents points of interest to the community. All persons have a right to travel freely upon the highway, subject only to a due regard to the rights of each other. Those rights depend upon certain statute regulations, upon custom, and upon the peculiar circumstances of each case. In England, where there is no statute upon the subject, the custom requires each traveler to bear

to the left in meeting.   The statutes of this Kingdom prescribe as follows:

"Whenever any persons shall meet each other on any bridge, road or other highway, traveling with carriages, wagons, carts, or other vehicles, each person so meeting shall seasonably turn his horse or other animal, or drive his carriage or other vehicle, to the right of the middle of the traveled part of such road or bridge, when practicable; so that the respective carriages or other vehicles aforesaid, may pass each other without interference.

"When it is difficult or unsafe, for persons traveling with any of the aforesaid carriages or vehicles, on account of their being heavily laden, or otherwise, to turn or drive their carriages, or other vehicles, to the right of the middle of such traveled part, as aforesaid, any person thus prevented, when meeting with any other person traveling with any of the carriages, or vehicles aforesaid, shall stop a reasonable time, at a convenient part of the road, to enable such other person to pass by."

"Whenever a traveler ask another to permit him to pass, the vehicle of the latter being stationary at an inconvenient place for passing by, or traveling at a slower rate, it shall be the duty of the person so requested, to make room for passing.

"No person shall permit his carriage or vehicle to travel or pass on any such bridge or road without a suitable driver or conductor; nor shall leave the same on any such bridge or road stationary, in such a situation as to obstruct other persons traveling with any carriage or other vehicle."

"Every person violating either of the foregoing provisions of the law of the road, shall be fined for each offense not less than one, nor more than twenty-five dollars, and any person injured by any violation of the provisions aforesaid, shall be entitled to recover damages in an action to be commenced within six months after the injury."  [Compiled

Penal Code, Chapter 53, Sections 9–13; Civil Code, Sections 373–377.]

It will be remarked, that no person is forbidden to travel upon the left side, or upon any portion of the highway. Any one may drive in the middle, or upon either side of the traveled road, provided he do not, in so doing, unreasonably obstruct persons who are upon the *lawful* side. The statute itself recognizes this right, in providing that persons meeting "shall seasonably *turn* to the right," and that any one prevented from so doing, "shall stop a reasonable time," &c. It only requires the turning to the right, "when practicable."

In New Hampshire it is intimated in one case "that if a person voluntarily goes upon the prohibited side of the way, his inability to yield the way probably would not furnish a legal excuse, exonerating him from liability for an injury sustained by one in passing, who was nowise at fault. It would be a legal fault, * * a question of law upon the facts proved, and not a question of fact for the jury." (Brooks *vs.* Hart, 14 N. H., 307.) Bronson *vs.* Noyes, 7 Wendell, 186, sustains the same doctrine, and both cases are cited without dissent by Angell, in the text of his treatise on the law of highways, Sec. 333.

But we are unable to accept, as sound law, the doctrine that where neither party is in fault, otherwise than by one being upon the wrong side of the road, the only question for the jury shall be, to assess the damages and find for the plaintiff. The law gives to all the full *reasonable* use of the traveled road, and we are of the opinion that the question of negligence in the conduct of a traveler who finds himself upon the left, and unable to turn seasonably, is exclusively for the jury.

Our view of the law, is taken in Parker *vs.* Adams, 12 Met., 415, where the Court (Dewey, J.) held as follows: "It is insisted that the defendant, being on the wrong side of the road, in violation of the provisions of the statute, was at

all events liable for all damage occasioned thereby, notwith-
standing any negligence on the part of the plaintiff. This
position, we think, is untenable."

We must, accordingly, dismiss the idea that a traveler is
legally liable, simply because he is not upon the right hand
side of the road, or because he fails to bear to the right.
Crowded streets, requirements of business, balking teams,
and occasions in the common experience of every one, give
sufficient interpretation of the law on this point. "*Lex nemi-
nem ad impossibilia cogit.*"

It was urged in this case, that the statute does not apply to
turning corners, and that no effort or precaution of the de-
fendant could have prevented the occurrence. Fales *vs.*
Dearborn, 1 Pick., 344, was a case precisely like the present.
There the Court instructed the jury, that the defendant, who
was turning a corner upon the left, was answerable for all the
injury, and the Court above held that the defendant, before
attempting to cross in that manner, should have waited to
see if he would thereby interfere with persons in the proper
exercise of their right. In Lovejoy *vs.* Dolan, 10 Cush., 495,
the defendant was driving around a corner, upon the right
side, when he collided with the plaintiff's coach, which was
on the left. The judge declined to dismiss the case on these
facts, and instructed the jury that the statute did not apply to
such a case ; that the position of the plaintiff's coach was to
be considered as a circumstance bearing upon the question of
negligence on his part. The Supreme Court, (Bigelow, J.,
afterwards C. J.) sustained their ruling, using this language :
"The language of the statute manifestly has reference only
to the meeting of persons traveling on the same highway.
The terms 'meet' and 'pass' are used in their strict signi-
cation, and are intended to apply only where travelers are
approaching each other from opposite directions, intending
to pass on the same road. They cannot with accuracy be
said to meet and pass, when they come together in different

directions from two roads or streets which intersect each other. Besides, the language of the statute, 'that whenever any persons shall meet each other on any road, &c., each person shall seasonably drive, &c., to the right of the middle part of such road,' clearly contemplates only one road upon which travelers are coming towards each other from opposite directions." But we do not regard the view of the learned Court in the last case as decisive of the rights of the parties in this case. It was the plaintiff in the former case, and not the defendant, who was on the left side. The instructions, leaving the whole question to the jury, were precisely those given in this case, and were expressly approved. Fales *vs.* Dearbon, *ubi supra*, was disapproved in Lovejoy *vs.* Dolan, in so far as the Court had decided that there was *legal* negligence, instead of leaving it to the jury. In Pluckwell *vs.* Wilson, 5 C. & P., 375, Alderson, J., held "that a person is not bound to keep on the ordinary side of the road, but that if he did not do so, he was bound to use more care and diligence, and keep a better lookout." In the case at bar, the jury by their verdict, affirmed the want of such due care, as would absolve the defendant's servant and put the collision under the category of those accidents in which neither party is to blame.

Was this negligence of the servant, in law, the negligence of the plaintiff? In Goodhue *vs.* Dix, 2 Gray, 181, the action was founded upon the statute, and the Court held that the remedy was not against the owner of the team, who was not shown to be implicated in the servant's act, but was solely against the servant. It is to be observed, that the action in that case was brought under the statute by the declaration, and that no averment was made of carelessness or negligence on the part of the defendant or his servant. The Court below made the defendant responsible for the results of the servant's act, in omitting to bear to the right, and were overruled. In the present case, which was

appealed from the Police Court, no written declaration was made, or required, the plaintiff relying on his common law rights, as well as on the statute. In the Massachusetts statute, every person offending against its provisions, besides being liable to a fine, is expressly made liable for all damage resulting. Our statute makes the offender personally liable to a fine, but does not refer the general civil liability to him. We think, therefore, that the common law liability of the plaintiff, for his servant's negligence is not affected by this statute.

The evidence offered was *prima facie* sufficient to show that the servant was acting in the scope of his usual employment. [Smith's Master and Servant, p. 134, *et passim.*] The terms of hiring were known to the defendant. His servant was driving, and if this was a servant engaged for other duties, as a house servant for instance, and not for driving, it was easy for the defendant to show it.

The test of the master's liability is not in his consent or intention, nor indeed is it in the intention of the servant. All persons owe to the community the duty of selecting servants for driving, who can be trusted to drive prudently in the highways. The rule is clearly drawn in Howe *vs.* Newmarch, 12 Allen, 56, (Hoar, J.) thus: "The master is not responsible as a trespasser unless by direct or implied authority to the servant he consents to the wrongful act. But if the master give an order to a servant which implies the use of force and violence to others, leaving to the discretion of the servant to decide when the occasion arises to which the order applies, and the extent and kind of force to be used, he is liable if the servant in executing the order makes use of force in a manner or to a degree which is unjustifiable, and in an action of tort in the nature of an action on the case, the master is not responsible if the wrong done by the servant is done without his authority, and not for the purpose of executing his orders or doing his work. So that if the servant,

wholly for a purpose of his own, disregarding the object for which he is employed, and not intending by his act to execute it, does an injury to another not within the scope of his employment, the master is not liable. "But if the act be done in the execution of the authority given him by his master, and for the purpose of performing what the master had directed, the master will be responsible, whether the wrong done be occasioned by negligence, or by a wanton or reckless purpose to accomplish the master's business in an unlawful manner." See also McDonald *vs.* Snelling, 14 Allen, 290.

The Court in laying down the above rule, review the leading cases in point and arrive at conclusions which we regard as settling the law involved in that case, and applying to this.

Judgment affirmed.

A. F. Judd, for plaintiff; R. G. Davis, H. Thompson with him, for defendant.

Honolulu, November 10th, 1869.