MAYOR, &c., OF JERSEY CITY v. PATRICK KIERNAN.

1. When a public sewer breaks from faulty construction, and private property is thereby injured, an action will not lie, founded on such facts, against the city.

2. But if the city be notified of such break it then owes a duty to the individual injured, and for the breach of such duty an action will lie.

3. The foregoing rule applies only when the break in the sewer occasions a private nuisance exclusively, for if a public nuisance be the result the only remedy is by indictment.

4. If the sewer commissioner, without authority and in his own way, conducts the water of a sewer on to the land of an individual, the city is not responsible for such conduct.

5. A mortgagee out of possession may sue for injuries, direct or indirect, which occasion a loss to him by reason of the impairment of his security.

On case certified from Hudson Circuit.

The plaintiff offered evidence tending to show the following facts: The defendant, by regular proceedings under its charter, graded Montgomery street from Jersey City Heights by a cut through the rock on the brow of the hill, and by a filling between retaining walls over the meadow down a steep incline to the low lands, and constructed a main sewer therein for the drainage of the Heights. Another street, called Cornelison avenue, ran along the foot of the hill and was bridged over by the Montgomery street sewer and road-way. The plaintiff owns lots on Cornelison avenue, lying on the level of that street and below the level of the sewer in Montgomery street. The sewer broke, through negligent construction, a short distance below the bridge, and the sewage flowed through the retaining walls upon vacant lots of other owners, and thence a distance of about one hundred feet to the land of plaintiff claimed to be damaged in this suit. This happened a few months after the sewer was constructed and about 1872. During that year the street commissioner, an officer having charge of streets and sewers for the defendant, without express authority, built a box drain from the break in said sewer across said vacant lots and to the middle of plaintiff's land, and then dug an open ditch through plaintiff's land to an adjoining creek. This has received the flow of sewage down to a short time before the commencement of this suit. The box drain decayed and at times the land has been flooded with the flow. The residents on the Heights have continued to use the sewer, and the flow of sewage has increased by reason of new connections made from time to time, under authority of the city, to accommodate the increased population.

In 1872 the plaintiff was mortgagee and acquired title by foreclosure about 1881.

On this state of facts the following questions are raised:

1. Can a land-owner recover against a municipal corporation damages sustained by him by the flooding of his land with sewage from a break in a sewer lawfully constructed by said corporation in a public highway, under authority of its charter, where the break was occasioned by negligence in the construction of the sewer?

2. Can such land-owner so recover such damages for the continuance of the injury beyond a reasonable time for repairing the sewer and for the increased flow resulting from new connections, even if he cannot recover for the original injury?

3. Can such land-owner so recover such damages (in either case above stated) where the street commissioner, an officer having charge of the streets and sewers for said corporation, of his own motion, conducted the sewage from the break in the sewer to and on the plaintiff's land?

4. Can a mortgagee recover for damages to his mortgage interest in the cases above stated respectively?

The foregoing questions are made and stated as presenting a case of doubt and difficulty, and are hereby certified to the Supreme Court for its advisory opinion.

M. M. KNAPP, *J. S. C.*

Argued at November Term, 1887, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and REED.

For the plaintiff, *Gilbert Collins.*

For the defendant, *R. B. Seymour.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. From the statement of facts prefacing this opinion it will be perceived that the first question submitted to this court for its advice relates to the legal basis of the action. Will a suit lie against a municipality for damages done to land adjacent to a public sewer by water escaping therefrom by reason of a break in such sewer, occur-

ring through faulty construction, and because the same was not kept in proper repair?

The general subject thus introduced is not a novel one to the courts of this state. As long ago as the year 1840, in the case of *Freeholders of Sussex* v. *Strader*, 3 *Harr*. 108, it was declared, in the language of the opinion : " That where a corporate body, whether of a municipal or a private character, owes a specific duty to an individual, an action will lie for a breach or neglect of that duty whenever such breach or neglect has occasioned an injury to that individual; but if such corporation owe a duty to the public, a neglect to perform it, although every individual composing that public is injured, some more and some less, yet they can have no private remedy at the common law."

The plaintiff in this reported case had sustained damage in consequence of his horses turning off from the abutment of a county bridge, which was imperfectly constructed, being without railings or parapets. It was admitted that the defendants were in default in their public duty to maintain this bridge in a safe condition, and that the plaintiff had suffered loss by reason of such neglect, nevertheless, the judicial interpretation of such facts was that they laid no foundation for an action against such public authorities.

Repeated adjudications have followed in the track of this decision, and eventually, in the case of *Livermore* v. *Freeholders of Camden*, 2 *Vroom* 508, the doctrine was affirmed and applied in its full vigor by the court of last resort.

Without, therefore, referring to the other cases, it is sufficient to say that to this extent the law, in this department of it, is not now open to discussion.

But the question supervenes, Does this rule apply to the facts of the present case? The courts have said, in a conclusive form, that when the neglect of a public duty results in a public injury, an individual cannot bring an action founded on his own particular loss. In such instances the public has been wronged and the only remedy is by indictment. But no case in this train of decisions has gone the length of hold-

ing that when, by breach of such public duty a private damage and no public damage has been done, that the person so exclusively damnified is remediless. It is decided that when by such official malfeasance or neglect a public nuisance has resulted, the remedial procedure is a prosecution on the part of the state. The inquiry now is, What is the legal rule when a private nuisance alone has arisen exclusively from such a source? In the principal case referred to, the neglect complained of—that is, the absence of proper care in the construction or reparation of the bridge—was a public evil affecting the body of the people; in this case the defect in the sewer is injurious, apparently, to the plaintiff and one other contiguous land-owner alone. Consequently, in the case in hand, as the mischief to the community, if any, is not of a magnitude sufficient to justify an indictment, while, at the same time, it damages the property of an individual, it is obvious that unless such a suit as the present one will lie, the wrong cannot be redressed by any method known to the law.

After careful consideration, my conclusion is that the general rule established by the line of cases referred to is not applicable to the facts present in this instance, and that whenever an indictment will not lie for such a neglect as is here complained of, attended with such consequences as have here ensued, the person thus specially injured may, in order to right the wrong, resort to an action. The injury is altogether private in its character and is capable of being continued indefinitely, so that under some circumstances the land might, in substance, be applied to the public use without compensation. The injustice done and the necessity for a remedy are alike obvious, and it would be to push to an extreme the doctrine which, under most circumstances, gives immunity to the community in case of the misconduct of public officials.

Nor have I found any decision which, under circumstances similar in general character to those above stated, has denied the right of the person damnified to an action. It is true that the reasons assigned for allowing such remedy have been various and not altogether accordant, but it is not observed

that anywhere such remedy has been refused. And this has been the course sanctioned even in those jurisdictions within which the exemption of the public from responsibility for the neglect of its officers has been maintained with the utmost vigor. This is notably so in the State of Massachusetts. There it has been uniformly laid down that as a general rule no private action is maintainable against municipalities for the breach of any corporate duty unless under the force of some legislative enactment. Many cases to this effect will be found collected in *Hill* v. *Boston*, 122 *Mass.* 344, in which decision it was adjudged that a scholar sustaining an injury by reason of the defective condition of a public school-house did not become possessed of a right of action against the city. But, notwithstanding the prevalence of this general rule thus strongly applied, it has been settled by the courts of that commonwealth that in case of neglect in the construction or reparation of a public sewer, and a consequent damage to private property, an action is sustainable in the name of the person thus injured against the municipal corporation. *Child* v. *Boston*, 4 *Allen* 41; *Emery* v. *Lowell*, *Id.* 104. And in New York a similar decision is to be found in the case of *Bailey* v. *Mayor of New York*, 3 *Hill* 531.

The conclusion to which this court has finally come is this: That the defendant is not responsible for the consequences of a break in the sewer in question, *per se*, even though it be the result of the carelessness of its own agents, for the public is not responsible for such misfeasances of its officers; but when such break has occurred, occasioning a private nuisance exclusively, and the public authorities have been notified of the accident, we think that then they owe a duty to the individual to put the sewer in a proper condition, and that for the non-performance of such duty that an action will lie.

The next interrogatory relates to the alleged action of the sewer commissioner in conducting the water from the break in the sewer over intervening ground on to the lands of the plaintiff.

The question is whether the city is answerable for the consequences of such conduct.

This act was a mere trespass, done without any pretence or color of right, so far as the case shows. The city itself could not lawfully do the act in question, and therefore could not authorize its officer to perform it. The consequence is it cannot be claimed that in committing this wrong the officer was acting *ex officio*, for it cannot be implied that the municipality, by merely putting a man in office, authorized him to commit trespasses at will.

The fourth and last question is whether a mortgagee can recover damages to his mortgage interest in this class of cases.

The inquiry is loosely stated, for the court is not told whether the mortgagee referred to is in possession or not of the premises.

If in possession after condition broken, it is conceived that the mortgagee, as to trespassers, would be deemed, in a court of law, the owner out and out. In such case he could bring suit as though the title to the property was vested in him unconditionally.

But it is presumed that the question propounded is directed to the situation of a mortgagee being out of possession. In such an attitude his right of suit is limited to the redress of such wrongs as in their consequences impair or destroy his security. Such right of redress would seem to be co-extensive with all trespasses and wrongs, whether direct or indirect, having such injurious effect. The law upon this subject is to be found in *Jackson* v. *Turrell*, 10 *Vroom* 329.