*J. A. Magoon,* for plaintiff.

*W. O. Smith,* for defendant.

---

## J. L. DUNCAN *vs.* WILDER STEAMSHIP COMPANY.

### EXCEPTIONS.

HEARING, DECEMBER 31, 1891. DECISION, MARCH 1, 1892.

McCULLY, BICKERTON AND DOLE, JJ. JUDD, C.J. being disqualified by reason of pecuniary interest in the defendant company.

An employee is liable for the conduct of his servant, whether it is lawful or not, if it is within the scope of the authority conferred upon him, either expressly or by fair implication.

The defendant company, not having participated in the act complained of by plaintiff, is liable to him only for the actual damages attending the act of the master, if that act was unlawful, and no exemplary or punitive damages can be allowed against defendant.

OPINION OF THE COURT, BY DOLE, J.

This is an action of trespass for false imprisonment, and was tried at the last July Term of this Court, Mr. Justice Bickerton presiding.

The defendant is a corporation owning steam vessels and carrying on a coasting business among the Hawaiian Islands. On the morning of the 18th day of October, A. D. 1890, just after midnight, while the Claudine, one of the steamers of the defendant, was lying at the port of Lahaina with steam up, there was an altercation between the plaintiff and Captain Lorenzen, master of the Claudine, which was terminated by the arrest of the plaintiff, and his removal from the vessel by two police officers, by virtue of the following order :

"Wilder Steamship Company, Lahaina, October 18th, 1890. Deputy Sheriff of Lahaina. I request you to arrest and take out of my steamer Claudine, Mr. Duncan, Chief Engineer, for mutinous conduct and obstructing me in the navigation of said steamer.

(Sig.) T. C. Lorenzen, Master S. S. Claudine."

The plaintiff was taken ashore by the police officers, and kept in custody for several days, and finally taken to Honolulu, where he was set at liberty by the Marshal.

The plaintiff claimed $5,000 damages, and the jury returned a verdict for $1,000. The defendant excepted to the verdict, as contrary to the law and the evidence, and also to the instruction requested by the plaintiff, that "if the Captain, the servant of the defendant, ordered the Sheriff to arrest the plaintiff, and he did so arrest him and restrain him of his liberty without a warrant, while plaintiff was not doing any unlawful act, the verdict must be for plaintiff." The defendant also excepted to the refusal of the Court to give the following instructions :

"1. It was therefore within the scope of the master's authority to restrain plaintiff on board or to remove him from the ship, but if the master ordered him into custody or imprisonment on shore in a manner not authorized by law, such act was beyond the scope of his authority as such master, and his em-

ployers, the defendant company, are not responsible for such unauthorized act, nor liable in damages therefor."

" 2.  There having been no express authority from the company to the master to order plaintiff into imprisonment on shore, his implied authority does not reach to that act.  There is an implied authority to do all those things that are necessary for the protection of property intrusted to a person or for fulfilling a duty which he has to perform, but nothing more or further."

" 3.  From the time of plaintiff's arrival on shore, his detention and treatment were beyond the scope of the master's authority and duty to control, and for such detention and treatment of plaintiff on shore the defendant company are not responsible or liable in damages."

" 4.  If the jury shall find the plaintiff entitled to a verdict and to damages, the amount of such damages must be confined to the loss or damages actually incurred or suffered by plaintiff as a direct and immediate result of his having been placed on shore at Lahaina by the master of the ship."

" 5.  Plaintiff's imprisonment while on shore or thereafter, or anything in his treatment by the police after his arrival on shore, should not be considered in reaching such estimate."

On the question of the liability of the defendant for the acts of its servant, the master of the Claudine, it is a well established principle of law that an employer is liable for the conduct of his servant whether it is lawful or not, if it is within the scope of the authority conferred upon him, either expressly or by fair implication.  There is some conflict in the precedents as to the application of this principle, but the prevailing rule appears to be this, as set forth in Wood's Master and Servant, 594 :

" In all cases the act must have been done while engaged in the prosecution of some business for the master, and that business must have been such as the servant had authority from the master to do.  That is, he must have been authorized either expressly or impliedly to do the act in some manner which he has improperly or wrongfully performed, and the fact that he was only authorized to do the act in a certain way (that is,

correctly) does not save the master from liability. If he was authorized to do the act at all, the master is liable for the consequences of his doing it in a different manner, if the mode adopted by him is so far incident to the employment that it comes within its scope; for, having given the servant authority in the premises, he alone must suffer for its abuse. He has set the wrong in motion and must abide the consequences as against innocent parties."

The rule is more concisely stated on the 595th page, as follows :

" For a willful and malicious trespass of a servant, not commanded or ratified by the master, but perpetrated to gratify the private malice of the servant under mere color of discharging the duty which he has undertaken for his master, no action will lie against the master. But if the act of the servant was necessary to accomplish the purpose of his employment, and was intended for that purpose, however ill advised or improper, then it was implied in the employment and the master is liable, though the servant may have executed it willfully and maliciously. These rules apply to corporations as to private individuals."

The following cases are among those which support this statement of the law: *Bayley vs. Manchester R. R. Co.,* L. R. 8 C. P. 148; *Fraser vs. Freeman,* 56 Barb., 234; *Bryant vs. Rich,* 106 Mass., 188; *Limpus vs. London Omnibus Co.,* 1 H. & C. 526; *Midland R. R. Co., vs. Daykin,* 33 Eng. L. & E., 193, 9 C. & P., 607; *Phil. & Read. R. R. Co., vs. Derby,* 14 How., 468; *Weldon vs. Harlem R. R. Co.,* 5 Bosw., (N. Y.) 576; *Snodgrass vs. Bradley,* 2 Grant's Cases, (Penn.) 43.

It was within the scope of the Captain's employment to keep order and enforce discipline on the ship, and on this occasion it became necessary for him to take summary measures to do so; but the fact that he made a mistake in judgment in carrying out his legitimate purpose, and illegally subjected the plaintiff to injurious treatment, does not relieve the defendant, and it is liable in damages for the injury sustained by the plaintiff, including the restraint after leaving the vessel, that being the

continuation and natural consequence of the wrong initiated by the defendant's agent on board.

In accordance with the foregoing statement of the law, we overrule all of the defendant's exceptions to the instructions of the Court or its refusal to instruct the jury in relation to the questions of the defendant's liability, and of plaintiff's right to damages for the continued restraint suffered by him after having been taken from the vessel.

The defendant further asked that the following instruction be given to the jury : "The defendant company, not having participated in the act complained of by the plaintiff, are liable to him only for the actual damages attending the act of the master, if that act was unlawful, and no exemplary or punitive damages can be allowed against defendants." This instruction was refused, and the defendant excepted, and excepted also to the charge of the Court as a whole.

This last instruction should have been given, if not in the words requested, then in other words substantially covering the ground.    We find no instruction on this point in the charge of the Court as reported, though it contains nothing directly inconsistent with it.

The defendant was entitled to have the attention of the jury called to this distinction between actual damages and exemplary or punitive damages, and to have them instructed to base their estimate of damages solely upon the actual injuries suffered by the plaintiff as the result of the unlawful conduct of the agent of the defendant.    *Amiable Nancy*, 3 Wheat., 558 ; *McGuire vs. Golden Gate*, 23 Myers Fed. Dec., 4661–2 ; Field on Damages, Secs. 93 and 679.

For the want of instruction on this point the jury may have adopted the principle of exemplary damages in making up their verdict, and so have returned a larger amount against the defendant than if they had been limited to actual damages.    It was the defendant's right to have been protected from this danger by the Court, and this not having been done, it seems to us that the verdict should be set aside as to the amount of damages, and

a new trial allowed to reconsider and decide the question of the amount of damages. And we so order.

*Paul Neumann* and *A. P. Peterson*, for plaintiff.

*Ashford & Ashford*, for defendant.