# KUMAZO MATSUMURA *v.* COUNTY OF HAWAII.

### EXCEPTIONS FROM CIRCUIT COURT, FOURTH CIRCUIT.

ARGUED JUNE 10, 1909.                    DECIDED JULY 9, 1909.

### HARTWELL, C. J., WILDER AND PERRY, JJ.

JURY—*harmless irregularity in drawing.*

> Advantage cannot be taken of an irregularity in the drawing of trial jurors unless it clearly appears that the party objecting was injured.

EVIDENCE—*harmless admission.*

> The admission of incompetent evidence of a material fact is an error without prejudice when the fact is proved by other competent and undisputed evidence.

COUNTIES—*liability for unauthorized or prohibited acts of servant.*

> A county is liable for injury to private property caused by the negligent act, done in the course of their employment, of road employees engaged to repair a public highway, even though the act was not authorized or was expressly forbidden by the county or was in itself a trespass on the land of third parties other than the plaintiff.

### OPINION OF THE COURT BY PERRY, J.

This case has been before this court, on exceptions to the sustaining of a demurrer. 19 Haw. 18. The conclusion on those exceptions was that upon the facts stated in the declaration the county of Hawaii was liable. At the trial, which was had before a jury, a verdict was rendered for the plaintiff in the sum of $7,500. The case now comes to this court on thirty-four exceptions.

Exception 1. The jury was impanelled January 21, 1909, out of twenty-six names drawn by the judge January 11, 1909. The November term, 1908, of the circuit court of the fourth circuit did not expire until after the conclusion of the trial in this case, the February term opening, under the statute, on the

third Wednesday of February, 1909. The regular jurors in attendance at the November term were excused for the term on December 21, 1908. On January 11, 1909, a criminal case, *Territory v. Toon Miung Ho,* was called and the presiding judge directed the clerk to draw a jury for its trial. No jurors being in attendance and more than three talesmen being required, the court, on the theory that the term of service of the 1908 jurors had expired, and without publication of notice, directed the drawing of the twenty-six names just referred to, for the purpose of filling the panel and acting as trial jurors for the residue of the term, out of the list of 150 trial jurors prepared by the commissioners in December, 1908, for the year 1909. In making this drawing the court acted under R. L. Sec. 1782. Prior to the impanelling defendant challenged the array.

The contention is that the failure to publish notice in accordance with the provisions of R. L., Sec. 1779, as amended, rendered the drawing irregular, that under that section no drawing out of the list for 1909 could be made for service during January, 1909, unless for a special term first called and that R. L., Sec. 1782, does not authorize a drawing when *no* jurors are in attendance or obtainable but only when some, insufficient in number, are in attendance or obtainable. Assuming, but not deciding, that the drawing was irregular, the error cannot result in a new trial, because it does not appear that the plaintiff was injured by the drawing. Sec. 1795 of the Revised Laws reads as follows, omitting immaterial portions: "No person shall take advantage of any irregularity * * * in the drawing, summoning, returning or impanelling of * * * trial jurors unless such irregularity shall have been objected to by him before verdict or unless it clearly appears that he was injured by such irregularity." The word "or" towards the end of the sentence should be read as "and." The context so requires. While defendant's challenge was interposed in

time, there has been no showing or claim that the irregularity in any way injured the plaintiff. No reason exists for supposing that it did. It may be added that Sec. 1795 was enacted in 1903 and that no such statutory provision was in force at the date of the decision in *King v. Cornwell,* 3 Haw. 154 (1869), in which case a similar irregularity was apparently regarded as reversible error.

Exceptions 2 to 8, 11, 12 inclusive. The court admitted testimony of a statement to plaintiff by Keola, one of the servants of the defendant engaged in repairing the road at the time of the injury complained of, "I made you a lot of pilikia and I don't care if I *make* (die) ;" and also of another statement by the same servant to the effect that he, Keola, "was very sorry, that he had no intention of doing anything that way, and he asked my pardon," made in answer to a remark by the witness, who had been injured as a result of the accident in question, "You see what you have done because you didn't mind me and stop the water a little mauka; see the condition I am in now." The acts complained of and the resulting injury to plaintiff's property occurred about noon. The first of these statements was made "in the latter part of the afternoon," and the second a day or two later. The case sought to be established by the plaintiff was that Keola and three others while acting as the agents and servants of the defendant in clearing of weeds a public highway situated in the defendant county negligently tapped a flume which paralleled the highway at that point and caused water to flow in the gutter along the highway for the purpose of carrying off the weeds and that because of this flow of water from the flume to the highway large quantities of earth and rock were loosened and fell against and destroyed certain houses and other property of the plaintiff. The testimony was evidently admitted as admissions of an agent against his principal. Assuming that the admission was erroneous, the error was not prejudicial or reversible. It

was abundantly proved by other evidence which stood undisputed that the flume was tapped by Keola and his co-laborers, that the flow of the water diverted caused a land-slide and that the land-slide, whether by the direct impact of the earth and rocks so precipitated or by a resulting shaking of the ground at that point, caused the injury to plaintiff's property. That there was such undisputed proof is admitted, but it is contended on behalf of the defendant that Keola's statements as received in evidence from other witnesses could be construed by the jury as admissions that the material dislodged came in direct contact with the plaintiff's buildings and other property and thus caused the injury and that the error was therefore prejudicial because one of the defences at the trial was that the injury was caused not by direct contact with the earth and rocks but by the quaking of the ground operating upon the flimsily constructed buildings of the plaintiff. Assuming that upon the latter theory the diversion of the water could not be regarded as the proximate cause of the injury, we think that Keola's statements under consideration are incapable of the construction urged and that no reasonable juror could have understood them as being anything further than an admission that he, Keola, or those under him had set in motion the forces which directly or indirectly resulted in the injury. The plaintiff's case was as strong without the testimony as with it. The admission of incompetent evidence of a material fact is an error without prejudice when the fact is proved by other competent and undisputed evidence. See *Railway v. Elliott,* 102 Fed. 96, 106; *Gay v. Farley,* 16 Haw. 69, 79; *Kapiolani Estate v. Thurston,* 17 Haw. 312, 323-326; *Brown v. Spreckels,* 18 Haw. 91, 104.

Exception 9. Plaintiff was asked upon cross-examination, "Can you state, from the appearance of the remains of the warehouse and its contents at the time you arrived from Hilo after this accident took place, in what way the building went

down, whether it tumbled over or slid down the bank or how?"
This question was correctly disallowed for it called for a con-
clusion of the witness as to the precise method of destruction
drawn from what he saw on the ground. At most his testimony
could properly refer to what he saw, leaving it to the jury
to draw its inference as to the cause and the method of the
injury.

Exceptions 15, 21, 24, 25, 26, 27. Some of these are to
rulings on evidence and the others on the subject of instruc-
tions to the jury. It is contended that they present the ques-
tion whether the defendant is liable for acts done by the labor-
ers without express authority or against express directions of
the road supervisor. It may well be doubted whether the
issue, in so far as it relates to acts against the express direc-
tions of the defendant, is raised. We shall, however, consider
the subject as though both phases of the matter were properly
before us.

Where the employer is an individual or a private corpora-
tion the ordinary rule is that the master is liable for the negli-
gence, whether of omission or of commission, of the servant
committed within the scope of his employment even though
the acts or omissions were not authorized or were expressly
forbidden by him. It is not essential in order to render the
master liable that the acts complained of were necessary to
the performance of the master's business. These principles
are well established. The difficulty arises only with reference
to their application to particular cases. Whether an act is
within the scope of the employment may not be as simple of
solution in one instance as in another. The test seems to be
that if the servant, for however short a time, goes outside of
his master's business and does something wholly disconnected
from it purely for private purposes of his own, as, for example
to visit his vengeance or spite upon another, the master is not
liable; but if the act, however improper or ill advised, and

even though wrongful, unlawful or forbidden is done in supposed furtherance of the master's business and for the purpose of thereby performing the latter's work, liability attaches.

A few citations will not be out of place. "The test of the master's liability is not in his consent or intention, nor indeed is it in the intention of the servant. * * * If the act be done in the execution of the authority given him by his master, and for the purpose of performing what the master had directed, the master will be responsible, whether the wrong done be occasioned by negligence, or by a wanton or reckless purpose to accomplish the master's business in an unlawful manner." *Cummins v. Sumner*, 3 Haw. 170, 176, 177 (1869).

"It is a well established principle of law that an employer is liable for the conduct of his servant whether it is lawful or not, if it is within the scope of the authority conferred upon him, either expressly or by fair implication * * * the fact that he was only authorized to do the act in a certain way (that is, correctly) does not save the master from liability. If he was authorized to do the act at all, the master is liable for the consequences of his doing it in a different manner, if the mode adopted by him is so far incident to the employment that it comes within its scope; for, having given the servant authority in the premises, he alone must suffer for its abuse. He has set the wrong in motion and must abide the consequences as against innocent parties." *Duncan v. Wilder Steamship Co.*, 8 Haw. 411, 413, 414.

If the act "be done in the course of his employment his master is responsible for it, civiliter, to third persons and it makes no difference that the master did not authorize, or even know, of the servant's act or neglect; for even if he disapproved of or forbad it he is equally liable if the act be done in the course of the servant's employment." Smith's Master and Servant, p. 131. See also p. 130, 134, and Wood, Master and Servant, 590, 595.

"A master is liable to third persons injured by negligent acts done by his servant in the course of his employment,

although the master did not authorize or know of the servant's act or neglect, or even if he disapproved or forbade it." *Singer Manufacturing Co. v. Rahn,* 132 U. S. 518, 522, 523.

"We find no case which asserts the doctrine that a master is not liable for the acts of a servant in his employment when the particular act causing the injury was done in disregard of the general orders or special command of the master. *Such a qualification of the maxim of respondeat superior would, in a measure, nullify it." Railroad v. Derby,* 14 How. (U. S.) 468.

"At common law the master is responsible * * * whether the wrong done be occasioned by the mere negligence of the servant or by a wanton or reckless purpose to accomplish the master's business in an unlawful manner. * * * The fact that the act done is contrary to an express order of the master will not exonerate him." *George v. Gobey,* 128 Mass. 289.

"The question is not what was the nature of the act in itself but whether the servant intended to act in the master's interest." It is sufficient if the servant acted "in the way of his employment and in the supposed interest of his employers," but not if he acted "only for some purpose of his own." Pollock, Torts, pp. 61, 62.

"It is not sufficient for the master to give proper directions; he must also see that they are obeyed." 2 Cooley, Torts, p. 1028.

See also Id., p. 1033; *Driscoll v. Carlin,* 11 Atl. (N. J.) 482, 483; *Waterworks Co. v. Hubbard,* 4 So. (Ala.) 607-609; *Cosgrove v. Ogden,* 49 N. Y. 255, 257; *Ellegard v. Acklund,* 45 N. W. (Minn.) 715; *Powell v. Deveney,* 3 Cush. 300, 305; *Howe v. Newmarch,* 12 Allen 49, 57; *Bayley v. Railway Co.,* L. R. 8 C. P. 148, 152, 153.

Applying these principles to the case at bar, but still assuming that the employer was an individual or a private corporation, the tapping of the flume was an act done within the scope of the employment of Keola and his colaborers. The use of the water was, it is true, resorted to by the laborers largely for their own convenience in order to save themselves the greater physical exertion required in carting off the weeds in wheel-

Matsumura v. County of Hawaii, 19 Haw. 496.

barrows as they had been directed to do, but this of itself would not free the employer from liability.   See *Cosgrove v. Ogden,* supra.   It was still an act done towards the performance of the work of repairing the highway for which the men had been employed and in supposed furtherance of that work. Within the meaning of the rule under consideration it was not an act done purely for the purposes of the servant, as it would have been, for example, if the water had been diverted solely for the purpose of applying a neighboring taro patch belonging to Keola.   It was not disconnected from the master's employment nor was it born of the malice of the servants or for any private ends of their own.

If instead of diverting the water Keola and his associates had borrowed a mechanical rotary street sweeper drawn by horses,—for the same purpose of doing the work more conveniently and with less physical exertion to themselves—and had thereby caused plaintiff's horse to bolt and consequent damage to his property, the act, although unauthorized or forbidden by the employer, would still be within the scope of the laborer's employment and one for the consequences of which the master would be liable.   The same would be true if the laborers had been directed, in connection with their employment to blast certain portions of a highway, not to use more than one-half of an ordinary stick of giant powder in each blast and then had disregarded their instructions and used two or three sticks in a blast thereby causing damage.   No distinction in principle exists between these hypothetical cases and the case at bar.

There is great conflict in the authorities as to whether municipal corporations in general and counties in particular are liable for the negligence of their agents and servants.   That question, however, has been settled in this jurisdiction and in this case in favor of the existence of the liability.   Ante, p. 18.   In that opinion this court, recognizing "the general

rule of the common law to afford redress for wrongs suffered by individuals," placing the "burden of argument upon those who would exempt any corporation, public or private, from the general doctrine of liability for its torts," and conceding that it was difficult to infer from the declaration in this case "whether the injury was the necessary result of a diversion of the water or whether it arose from the negligent manner in which the act was done," held that "on either theory it (the declaration) states a cause of action as against a municipal corporation" and as against the county of Hawaii. It also held that "when the municipality undertakes to exercise such a power" (of maintaining highways) "and its officers or agents do the work negligently or unskilfully any person damaged in consequence thereof may maintain an action against the municipality," and further said: "The case at bar is concerned only with the invasion of a private right through misfeasance of the defendant's agent, either as a necessary result of his wrongful act or because of the negligent manner in which it was done. Upon either theory a municipal corporation would be liable."

In the law of negligence is there any distinction between municipal corporations on the one hand and individuals or private corporations on the other as to liability of the master for the unauthorized or prohibited acts of the servants? The defendant contends that there is and cites in support of his contention certain cases. None of them, as we read them, are on the precise point now under consideration. None of them are cases recognizing that a municipal corporation is liable for the negligence of its servants and then limiting such liability to instances other than those where the act causing the damage was not expressly directed to be done or was expressly forbidden. Each of them is based upon a state of facts essentially different from that in the case at bar. Some of them are cases upon contracts. Others are actions for the

value of soil or other material wrongfully taken from plaintiff's property for public improvements. In some of them at least the language used may at first sight seem to support the defendant's present contention, but that language must be read in the light of the facts of the particular case in which it was used and with reference to them. A few of the cases thus cited by defendant will now be referred to in detail.

*Whiteside v. U. S.,* 93 U. S. 247, was an action, originating in the court of claims, to recover a sum of money expended by claimants in hauling, bailing and ginning cotton under an alleged contract with an assistant special agent of the treasury. The appellate court held, with good reason, that the contract was beyond the authority of the person who purported to act for the United States, that two minds are required to make a contract, and that the contract was void. What the court said about acts "within the scope of the authority of an agent" was said with reference to those facts and not in relation to the law of negligence.

In *Caspary v. Portland,* 24 Pac. 1036, 1037, the declaration was held defective in not stating any of the facts which would show whether a *servant* of the city had done the acts complained of and whether he had done them under circumstances rendering the city liable. Upon all the authorities the doctrine of respondeat superior does not apply unless the relation of master and servant exists.

In *Chicago v. McGraw,* 75 Ill. 566, 570, compensation was sought for injury caused to the defendant's property by widening a canal. The acts complained of were done by one who claimed to be widening the canal by contract with the city. The contract was not in evidence nor was there proof of any ordinance authorizing the work. The court held that such evidence was necessary and that in its absence it could not infer the making of such a contract or know whether the city's agents or employees "acted within the scope of their duties."

*Butler v. Oxford,* 13 So. (Mass.) 626, was an action for personal injuries. One McEwen was shown to have carried, in the city corporation cart, a stove from a church at the request of the rector and to have deposited it in a highway. Plaintiff's horse shied at the stove and the injury followed. No evidence was introduced tending to show what were McEwen's duties to or employment by the city and the court held that in the absence of such a showing it could not say whether McEwen in carrying the stove was acting within the scope of his duties.

In *Trustees of the Town of Odell v. Schroeder,* 58 Ill. 353, an action for damages for false imprisonment, it was shown that a constable, without a mittimus or other legal process, imprisoned the plaintiff. The court held that the imprisonment was unlawful and that the town was not liable for the constable's illegal acts and their consequences.

In *Kiernan v. Jersey City,* 13 Atl. 170, the court held that the city was not liable for damages caused by a break in a sewer faultily constructed through negligence (to this extent the decision is perhaps contrary to 19 Haw. 18), but that it was liable for permitting the break to continue after receiving notice of its existence and of the injury it was causing plaintiff. The street commissioner dug an open drain across the plaintiff's land to carry off the sewerage from the break. This was held to be a mere trespass,—something the city could not lawfully do and therefore could not authorize its officers to do and hence that the officer was not acting ex officio and that the city was not liable.

*Hard v. City of Decorah,* 43 Ia. 313, was disposed of on the single point that the defendant was not alleged or proved to be a corporation.

In *Hanvey v. City of Rochester,* 35 Barb. 177, the common council passed resolutions authorizing the survey of Butler Avenue and the removal of obstructions therefrom. Plain-

tiff alleged that those acting under the resolutions removed his property from land that was his and not a part of Butler Avenue. The court held that the resolution did not authorize trespasses and that for the latter the city was not liable.

As between individuals the rule of respondeat superior "is not based upon any presumed authority in the agent to do the acts but upon the ground of public policy and that it is more reasonable where one of two innocent persons must suffer from the wrongful act of a third person that the principal, who has placed the agent in the position of trust and confidence, should suffer, than a stranger." *Lee v. Village,* 40 N. Y. 442, 448. No reason occurs to us for holding that this reasoning does not apply in its entirety with equal force to municipal corporations in those jurisdictions which recognize liability on the part of such corporations for negligence,— unless it be, as contended for the defendant, that the limitation as against unauthorized or prohibited acts is required or justified in order to avoid the possibility of collusion between irresponsible public servants and third parties. But the latter consideration, if it is forceful at all, ought to result in a declaration of immunity on the part of such corporation from all liability for negligence of whatever sort. On the latter point this court has already held to the contrary. Ante, p. 18. To make the exemption or limitation now asked for in favor of unauthorized or prohibited acts would, in a measure, to use the language of the supreme court of the United States, nullify the rule itself and the effect of the decision of this court on demurrer. *Railroad v. Derby,* supra. In the very great majority of cases of negligence on the part of a servant, whether the master be a public or a private corporation or an individual, the acts or omissions complained of occur without the authority or against the express direction of the employer. If such a qualification were to be adopted it would be exceedingly difficult in many instances to apply it. A direction to

a servant to be cautious and prudent and not to be guilty of any negligence would seem in that event to secure immunity to the employer as readily as would any other express command.

Authorities are not lacking which directly or indirectly support the view that the maxim in its entirety applies to municipal corporations. Premising only that the relation of master and servant exists and that the duties relate to the exercise of corporate powers and are for the peculiar benefit of the corporation in its local or special interest, Judge Dillon says, without qualification, that "the maxim of respondeat superior applies." Vol. 2, Sec. 974.

"So also public or municipal corporations are liable for injuries to third persons, resulting from the negligence of subordinate officers or agents acting under their authority and direction, in the construction of public improvements belonging to such corporations. In such cases the maxim respondeat superior properly applies in the same manner and to the same extent as in its application to the liabilities of private individuals." Story, Agency, Sec. 308, pp. 383, 384.

"The rules regarding the liability of corporations for the acts of their agents and officers are the same with those which apply as between masters and servants generally  *  *  * What has been said on this subject will apply to public corporations as well as to private." 1 Cooley, Torts, 208.

"Corporations, whether municipal or aggregate, are now held to the same liability as individuals." *Hilsdorf v. City,* 45 Mo. 94, 96, 97.

"Where the work is once conceded to be done by the corporation it would seem to be clear, on authority and general principles, that a corporation, public or private, must be held liable like an individual for injuries caused by negligence in the process of executing the work." *Eastman v. Meredith,* 36 N. H. 284, 295.

"It is also said that the flooding of B's land is not the result of a public work but of the negligence of the superintendent and therefore the municipality is not liable. The answer to this is that the law so far takes notice of the fallibility and imperfection of all human endeavor that one who entrusts his

Matsumura v. County of Hawaii, 19 Haw. 496.

affairs to his servant under instructions either express or implied to do only that which is lawful, is responsible for the neglect of the servant so to do. The general rules of agency apply to towns. They are 'subject to the same implications arising from their corporate acts, or the acts of their agents within the scope of their authority, without either vote, deed, or writing, as in the case of natural persons.'" *Rhobidas v. Concord,* 70 N. H. 90, 113.

"The corporation if liable at all are answerable for the conduct of their commissioner if he was acting under their authority and was engaged in the work in which they employed him when the injury, if any, was done, although he may have acted without their orders or contrary to them." *Hooe v. Alexandria,* Fed. Case No. 6667.

"The rule respondeat superior, though well recognized in fixing the liability of private corporations and natural persons, has been a source of much doubt and perplexity in its application to municipal corporations. It is, however, now well established that corporations of the latter class, when acting in a certain character or capacity, are liable as superiors and employers, for injuries to third persons resulting from the negligence and unskillfulness of their agents or servants, while in the line of their employment, in the same manner and to the same extent as private corporations or private individuals. Under analogous conditions, there seems to be no foundation in reason or public policy for exempting such public corporations any more than private individuals, from liability for injuries inflicted on others through the negligence of their agents." *City of Toledo v. Cone,* 41 O. St. 149, 159.

In *Barree v. City of Cape Girardeau,* 197 Mo. 382, 391, 392, the petition alleged that the plaintiff was the lessee of a corporation which held a street railway franchise from the City; that it was the duty of the city to keep its streets in repair, and that the city was in the act of repairing the same when the plaintiff came along the track placed in the street, with his car; that one Brunke was the agent and servant of the city in making the repairs and as such piled gravel and broken stone on the street car track so that the car could not pass; that

the plaintiff undertook when his car came along to remove the same; that thereupon Brunke, for the purpose of protecting the defendant's street from interference by the plaintiff, negligently and wrongfully committed certain assaults upon the plaintiff. That, perhaps, might be regarded as an extreme case, and yet the court held the defendant city liable, saying, inter alia, "It is a well settled principle of law that when an agent or servant is employed to perform a certain piece of work and while in the line of his duty he injures another even though he exceeds his authorized powers or disobeys his injunctions, his employer is responsible to the party injured for damages sustained by reason of such injury."

See also *Hawks v. Inhabitants of Charlemont*, 107 Mass. 414, 418; *Roughton v. City*, 113 Ga. 948 (39 S. E. 316); *Deane v. Inhabitants of Randolph*, 132 Mass. 475, 477; *Johnston v. District of Columbia*, 118 U. S. 19, 21, and *Lee v. Village*, supra.

In our opinion the rulings excepted to were correct.

Exceptions 16, 17, 18, 22, 23, 24, 28. Under these it is contended that the fact, if such it was, that the laborers in tapping the flume committed a trespass upon property belonging to the Onomea Sugar Company constitutes a defense to the plaintiff's claim. This is practically disposed of by what has been said on the last preceding point. The negligence consisted in the use of the water. It is immaterial from what source the water was obtained. Keola and the others with him were still the servants of the defendant and obtained the water solely in connection with the defendant's work which they were employed to perform.

Exceptions 10, 13, 14, 19, 20, 29, 30, 31, 32, 33, 34 have been abandoned.

The exceptions are overruled.

*C. F. Clemons* (*Thompson & Clemons* on the brief) for plaintiff.

*W. H. Smith* (*Charles Williams* and *W. H. Smith* on the brief) for defendant.