DOVER *vs.* MARTIN L. ROBINSON *et als.*

*Effect of altering a bond.*

The plea of sureties upon a collector's bond that it is not their deed is well maintained by proof that subsequently to its delivery and approval, and without their knowledge or consent, but with the knowledge and consent of the selectmen of the town having custody of the bond, the penal sum was changed by the principal from twenty-five hundred to twenty-five thousand dollars.

Such an alteration, so made, avoids the bond as to the sureties. It cannot be deemed a spoliation by a stranger. The inhabitants of the town cannot maintain suit against the sureties upon a bond thus vitiated. The deliberate intentional permission of such an alteration, by their general financial agents, defeats their right to recover upon such bond against those not cognizant of the alteration nor taking any part therein, nor ratifying the same.

The town itself ratifies such permission by inserting in their writ a count upon the bond in its altered condition. They cannot take the chance of reaping a benefit therefrom without incurring at the same time a risk of loss.

ON REPORT.

DEBT upon the bond of Martin L. Robinson and his sureties, for the faithful performance by him of the duties of collector of taxes. The defence was that the penal sum was altered after delivery by erasing the word "hundred" and inserting "thousand," without the knowledge or consent of the sureties. If the action could be maintained against them the defendants were to be defaulted; otherwise, it was to be discontinued as to the sureties and judgment taken against Robinson alone. The

bonds given by the same parties for previous years had been for
$25,000, and it was thought by the selectmen, when they approv-
ed it, that this was for the same sum.    The selectmen testified
that they did not assent to the change of the penalty, which was
made by Robinson, when it was handed him, merely to call his
attention to the mistake, and that the chairman of the board said
it could not charge the sureties for more than the original amount ;
while Robinson swore that the chairman told him (as he was
about to scratch out the word "hundred" with his knife) to write
the "thousand" over the top, if he wrote it anywhere.    He did
so, simply making ink marks across the "hundred."    There were
two counts in the declaration, the first upon a bond for twenty-
five thousand dollars and the second upon one of like date and
obligation in the penal sum of twenty-five hundred.

The justice drawing the opinion accompanied it with the follow-
ing memorandum, which is recited here as showing the precise
state of facts upon which the decision is based.

"My opinion in this case is predicated upon the following view
of the facts which I believe is the only one that we can reasona-
bly take upon the testimony as reported.

I state it in advance, because I think, if any difference of opin-
ion arises among members of the court, it will be upon the facts
and not upon the law, and therefore I think they had better be
discussed separately.

The bond in suit as originally executed, delivered and approv-
ed, was in the penal sum of twenty-five hundred dollars instead
of twenty-five thousand, which was the sum usually inserted in
the collector's bond.    In the fall of 1872, more than two years
after the bond was given, the selectmen discovered this fact, and
thereupon agreed to call the attention of the principal to it.

This was done by one of them in the presence of the other
two, and the bond was handed to the principal, who in the pres-
ence of all the selectmen, remarked that he could fix that, and
forthwith with a pen struck out the word hundred, and wrote the
word thousand over it.    There was but little conversation.    The

Dover v. Robinson.

testimony taken together seems to establish the fact, that one of the selectmen expressed the opinion that the change could not be made so as to hold the sureties beyond the sum first inserted without their consent, and that he directed the principal to write the word 'thousand' over the word 'hundred,' and that neither of the other selectmen said anything, expressing neither assent nor dissent. The bond was replaced upon the town files, and the alteration did not come to the knowledge of the sureties until the next spring. After it did come to their knowledge two of them took mortgages of the principal's property, conditioned to be void if the principal saved them harmless 'from all legal liability' on this and two other bonds which they had signed as his sureties, 'it being however expressly understood that this mortgage imposes no additional liabilities on said sureties.'

The sureties have paid to the town upon the other bonds more than the estimated value of the mortgaged property. Under these circumstances, the only reasonable inference seems to be that the alteration was made with the knowledge and consent of the selectmen, and that there is no evidence of any knowledge of, or consent to, such alteration on the part of the sureties at the time it was made, or of any subsequent ratification thereof by them."

*C. A. Everett* for the plaintiffs, contended that the only power given to the selectmen was to approve a sufficient bond. When they had done this they were *functus officio* in this respect, and could not authorize an alteration of one already taken and approved. The bond run to the inhabitants of the town, and the selectmen were strangers to it, so that an alteration made by them would not vitiate it; *a fortiori*, one made by the principal without consent of the obligees, would not have that effect.

*J. Crosby* and *A. M. Robinson* for the defendants.

BARROWS, J. Upon the testimony here reported the question seems to be whether the inhabitants of a town can maintain an

action against the sureties upon a collector's bond originally given in the penal sum of twenty-five hundred dollars when said penal sum has been altered by the principal in the bond, since its delivery, with the knowledge and consent of the selectmen of the town, from twenty-five hundred to twenty-five thousand dollars, without the knowledge of the sureties, and in the absence of all proof of a subsequent ratification by them. The proposition that these facts are sufficient to sustain the sureties' plea that such altered bond is not their deed, would seem to admit of little doubt. It is not a case of spoliation by a stranger. The cases which hold, as in *Small* v. *Danville*, 51 Maine, 359 ; and *Mitchell* v. *Rockland*, 52 Maine, 118, that towns are not responsible for the wrongful acts of their officers in the performance of a public duty imposed upon them by statute, have no proper application to a case like this.

It is no legitimate consequence of the doctrine of these and similar decisions, to subject the debtors of a town to the increased liabilities which might ensue from an undetected alteration of the instruments which form the evidence of their indebtment, when such alteration is made with the permission of the financial agents of the town, and to hold that such tampering with written obligations entails no risk of loss when unsuccessfully attempted. The town seeks here to enforce a right by virtue of a sealed instrument which was never executed in its present condition by those against whom they claim to recover on the strength of it. The change, which would avoid it beyond controversy or question if made with the consent of an individual obligee, was made by the consent of those whom the town had made its custodians. The plaintiffs claim to maintain their suit upon the bond notwithstanding its avoidance, upon the ground that the alteration was an act unauthorized by them, and one which their selectmen were not empowered by law or vote of the town to permit.

To be relieved from a liability incurred through the unauthorized and unlawful act of a public officer is one thing—to enforce as a valid subsisting claim a bond which has been vitiated with

the consent of those who rightfully had it in keeping on behalf of the town, is quite another. There seems to be no good reason why the principles which are laid down in *Chadwick* v. *Eastman*, 53 Maine, 12 ; and *Lee* v. *Starbird*, 55 Maine, 491, touching the alteration of written instruments offered in evidence should not be held to apply to a case like the present. It is not a case of misappropriation of payments like that of *Porter* v. *Stanley*, 47 Maine, 515, nor of negligence and mistake on the part of the selectmen like that of *Farmington* v. *Stanley*, 60 Maine, 472, where the defendants were rightly held chargeable for the default of their principal although they might have been relieved if the mistakes made by the town officers could have been allowed to pass uncorrected.

A careful examination will show that there is little analogy between those cases and the one now before us.

To sustain the present suit against the sureties we have a written obligation which has been vitiated as an instrument of evidence by the deliberate intentional act of the plaintiffs' agents, an act done apparently to secure themselves from the blame which might attach to them for their carelessness in accepting an inadequate security, but an act which as effectually deprived the town for which they acted of any right of action against these sureties upon this bond, as if they had never executed any bond at all. It is not their deed. But there is another view which is equally fatal to the plaintiffs' case. The plaintiff town presents itself here in this very suit in the attitude of ratifying this act of their selectmen.

Whatever might have been thought of the elaborate and ingenious effort of counsel to establish the position, that the inhabitants of the town ought not to be affected by what he claims to have been the unauthorized act of their agents, if they had brought suit on the bond as originally given, it can hardly avail when we find that the first count in the writ asserts the giving of a bond by the defendants in the sum of twenty-five thousand dollars. The plaintiff corporation seems to have been ready to avail itself of

the alteration if it passed unnoticed. They can do so only at the hazard of losing the benefit of their bond altogether. Asserting a claim here upon the bond in its altered condition, they must be held to have ratified the act of their selectmen in permitting the alteration and to stand in the same position as a private corporation or an individual does, in bringing suit upon an altered instrument.

That position is not improved by any acts or omissions on the part of the sureties. They gave no implied authority to the principal and to the town officers to insert such sum as they might agree upon, by executing the collector's bond in blank, as was done in the case of *South Berwick* v. *Huntress*, 53 Maine, 89.

The condition of the mortgage of the principal's property received by two of the sureties to secure them against all "legal liabilities" upon this and two other bonds, is so framed as to exclude the idea that they intended to ratify the alteration.

Even if they had not already paid upon the other bonds a sum larger than the estimated value of the mortgaged property, the reception of this mortgage could not be construed as a ratification.

As to them the plea that this is not their deed is well maintained.

Such a defence cannot avail the principal who made the alteration.                    *Plaintiffs have leave to discontinue as to the sureties.*

WALTON, DICKERSON, DANFORTH and VIRGIN, JJ., concurred.