CHARLES GAY, J. K. KAPUNIAI, O. BLACKSTAD and
W. A. WRIGHT, plaintiffs in error, *v.* J. K. FARLEY,
Tax Assessor and Collector, Fourth Division, defendant
in error.

ERROR TO THE CIRCUIT COURT, FIFTH CIRCUIT.

SUBMITTED JUNE 22, 1904.        DECIDED AUGUST 5, 1904.

FREAR, C.J., HARTWELL AND HATCH, JJ.

BOND—*of deputy assessor to assessor, held in trust for Territory.*
    An assessor holds a bond given to him by his deputy under C. L.,
    Sec. 842, for the benefit of the Territory and not merely for his
    own protection.

ALTERATION OR SPOLIATION—*quaere, whether assessor a party or stranger.*
    Quaere, whether a material change made in such a bond by the
    assessor should be considered an alteration by a party claiming
    thereunder or by one in privity with such party, or a mere spolia-
    tion by a stranger.

ID—*Independent collateral agreement on margin, not alteration or
spoliation.*
    A statement that one of the sureties had been given permission
    to withdraw from the bond, signed by the assessor and written in
    the margin of the bond below the names of the witnesses and above
    the certificate of approval of the bond, is an independent collateral
    agreement, and not an alteration or spoliation of the bond.

RELEASE OF SURETY—*assessor cannot effect, by collateral agreement.*
    An assessor can not by an independent collateral agreement
    release a surety on such a bond so as to defeat an action upon it
    against the sureties for the benefit of the Territory.

EVIDENCE—*when admissions of principal, admissible against sureties.*
    Admission of a principal as to the fact and amount of his short-
    age are evidence against the sureties, if they were made during the

term covered by the bond and in connection with his official duties. Quaere, whether they are evidence also when made after the expiration of the term, in an action against both principal and sureties on a joint obligation.

ID—*harmless error, not ground for new trial.*

The admission against the sureties, of admissions made by the principal after the expiration of his term is harmless error, when there is ample other uncontradicted evidence of the fact and amount of the shortage, including admissions made before the expiration of the term.

PAYMENT—*acceptance of I. O. U's.*

The treasurer's acceptance, from the delinquent deputy assessor, of I. O. U's of other persons to the amount or in excess of the amount of the shortage does not operate as payment or satisfaction so as to release the sureties from liability, if the I. O. U's were accepted for collection or for what they were worth, even if the treasurer had authority to accept them in full satisfaction at all.

## OPINION OF THE COURT BY FREAR, C.J.

E. E. Conant, tax assessor and collector of the fourth taxation division, an officer appointed by the treasurer of the Territory and under bond to him, appointed one of the plaintiffs in error, W. A. Wright, deputy assessor and collector for the district of Waimea in said division and, in pursuance of statutory requirement, exacted from him a bond for the faithful performance of his duties. This was a joint and several bond, dated January 2, 1902, in the sum of $6,000, payable to Conant and his successors in office by the said Wright as principal and the other plaintiffs in error as sureties, and was approved by Conant as to amount and sufficiency of sureties. The names of all the sureties were in the body of the bond before it was signed by any of them, and the other two sureties signed after Blackstad. In March following, after some correspondence between Blackstad, Conant and the treasurer, growing out of a request by Blackstad to be released from the bond, Conant wrote to him that he was "relieved from all further responsibility" and also indorsed on the bond, in the space below the names of the witnesses but above the certificate of approval of the bond, these

words: "O. Blackstad has been given permission to withdraw from this bond. E. E. Conant." In July following, it was ascertained that Wright was short in his accounts $2,848.40. He turned over to the treasurer I. O. U.'s of various persons for more than the full amount, on which $643.80 was afterwards collected, and finally this action was brought by the defendant in error, Conant's successor in office, for the balance, $2,204.60, against the principal and all the sureties on the bond, and, after trial by the court, jury waived, judgment was recovered for that amount and costs. Many exceptions were taken and embodied in a bill of exceptions, and now this writ of error is brought to reverse that judgment. Only a few of the twenty-seven assignments of error are relied on.

The main contention is that the surety Blackstad was released, and that his release operated in law as a release of the other sureties. It will be unnecessary to say what the effect of a release of one surety would be upon the liability of the others under the circumstances of this case, or what the effect would be as to delinquencies by the deputy assessor prior to the release, or whether in this case the delinquencies all occurred after the supposed release, because in our opinion the attempted release was ineffectual for want of authority in the assessor to grant a release.

Some attempt is made to add strength to the theory of an effectual release by the contention that the treasurer assented to it. For the treasurer is the assessor's superior in office, and the statute (C. L., Sec. 842, 3rd paragraph) provides that "it shall be the duty of the treasurer and the several assessors to from time to time ascertain and assure themselves of the sufficiency of the sureties on any of the bonds hereinbefore required; and he or they or either of them shall require new sureties at any time when the sureties on such bonds shall, in their opinion, become insufficient." Even if this provision could be construed as authorizing a release of a surety as well as a requirement of new sureties, when necessary, it is at least doubtful if it would authorize the treasurer to act with reference to deputy

assessors' bonds any more than it would authorize assessors to
act with reference to their own or each others' bonds. "Herein-
before" apparently refers to the act and not merely the section,
and the language of this paragraph may have been intended
distributively—the treasurer to pass upon bonds given to him
by assessors under Section 841 and assessors on bonds given to
them by their deputies under the first paragraph of Section 842.
But, however that may be, the evidence was such as to permit a
finding that the treasurer declined to act in the matter on the
ground that he was without authority and that he merely
referred the request for a release to the assessor.

The bond must be regarded as made to the assessor in his
official capacity and for the benefit of the Territory and not
merely for his own personal protection. He held it as a trustee
for the Territory. It was on a printed form, and was made to
him as assessor and to his successors in office, though that is not
expressly prescribed by the statute. The bond is required by
the statute and its conditions and minimum amount and the
minimum number and the qualifications of the sureties are pre-
scribed by the statute. The assessor is required to pass upon
the sureties and to assure himself from time to time of their
continued sufficiency and to require new sureties when necessary.
The deputy cannot enter on the duties of his office until his bond
has been filed and accepted. C. L., Sec. 842. Similar pro-
visions are made in the preceding section in regard to the
assessors' bonds, which are given to the treasurer, who appoints
the assessors, but it could not be held that such bonds are for the
personal protection of the treasurer. See *Sutherland v. Carr,*
85 N. Y. 105; *Hopkins v. Plainfield,* 7 Conn. 286. The fact
that the assessors are made responsible for the acts of their dep-
uties (C. L., Sec. 844) does not show that their deputies' bonds
were intended to be merely for their own protection.

Regarding, then, the assessor as holding the bond for the
benefit of the Territory, what authority had he for releasing the
obligation of the sureties to the Territory? He was not given
such authority expressly. The duty to require new sureties

when necessary does not imply an authority to release present sureties. Nor does the duty to require a bond of the amount and with the sureties prescribed, imply a power to release sureties. On the contrary the statute seems carefully designed to guard against anything that would jeopardize the public interests or lessen the security of the Territory under the bond.

The argument of counsel for the sureties is based largely on cases relating to the alteration or spoliation of instruments—either on the theory that the indorsement of the release on the bond amounted to an alteration of the instrument or on the theory that the reasoning of such cases would apply by analogy to this case. An alteration made by an obligor would, of course, not relieve him, for he would not be allowed to take advantage of his own wrong. But a material alteration by a party claiming under the instrument would vitiate it as to him as against nonconsenting parties, for it would be against public policy to permit him to take his chances of tampering with the instrument and destroying its identity without also the chance of loss in case of detection. He could not recover on the original instrument because that by his own fault no longer exists, nor on the instrument as changed, because that was not assented to by the obligor. This rule is enforced with special strictness in favor of sureties, for they are favorites of the law and their liability is *strictissimi juris*. But a change by a stranger is considered a mere spoliation as distinguished from an alteration and does not prevent a recovery by an innocent party. There is a distinction between a change in an instrument and a change in the contract. The former might operate as a release even though not so intended. In the present case there was an attempt to change the contract. If this could be regarded also as a change in the instrument it would be the view most favorable to the plaintiffs in error. But if it was a change in the instrument, it is at least doubtful if it was not a mere spoliation and not an alteration, or, in other words, there is much reason for holding that the assessor was a stranger and not a party for purposes of this kind; that he was not as agent of the Territory or as a party in

interest or otherwise clothed with authority to release a surety as against the Territory, an innocent party, for whose benefit he held the bond. The extent of his authority was matter of law and presumed to be known. Even if he could under some circumstances sue on the bond for his own benefit, so that an alteration made by him would be a good defense to such an action, it would not necessarily be a good defense to an action brought, as this is, solely for the benefit of the Territory. See *Ford v. Jefferson County, infra,* for a bond of a dual nature.

A large class of cases, some of which are now relied on, is distinguishable from this case. They are cases in which the bond never became operative as consented to, as where the name of a surety was erased or the body of the bond materially changed by an officer before its approval by or delivery to the proper officer and in such a way as to show that it had been altered, or where the name and signature of an intended surety was omitted after he had been approved when it was understood that he was to be a surety, or where it was omitted before approval with knowledge on the part of the approving officer that the other sureties understood that the omitted surety was to join. See *Smith v. United States,* 2 Wall, 234; *Fairhaven v. Cowgill,* 8 Wash. 686; *State v. Craig,* 58 Ia. 238; *State v. Allen,* 10 So. (Miss.) 473; *United States v. O'Niell,* 19 Fed. 567; *Blanton v. Commonwealth,* 20 S. E. (Va.) 884. This distinction is well illustrated by *State v. McGonigle,* 101 Mo. 353, in which the alteration was made before acceptance or approval, and *Pemiscot County v. Scott,* 104 Mo. 26, in which the change was made after approval. See also *Bingham v. Shaddle,* 45 Neb. 82. The present case is distinguishable also from the class of cases in which a change is made in the contract with or obligation of the principal. See *Reese v. United States,* 9 Wall. 13; *Miller v. Stewart,* 9 Wh. 680.

The view has been taken in a number of cases that an officer who approves a bond or who holds it as custodian for a state or county should be regarded as a mere stranger and a change by him as a mere spoliation. In *Pemiscot County v. Scott,* 104

Mo. 26, cited *supra,* the bond was given by a collector to the county, and the name of one of the sureties was erased after the bond had been approved. The court said: "It is true it does not appear by whom this erasure was made; but it could not have been made by the county. It must have been made by the surety or some county officer, or some third person. Such conduct on the part of the surety would not release him from liability on the bond. The alteration of a bond by an officer who is by law simply the custodian of it will not affect its validity. The mutilation of an official bond by such an officer or by any third person is spoliation and nothing more, and does not relieve the principal or any surety from liability thereon to the county." See also *Medlin v. Platte County,* 8 Mo. 235. In *State v. Berg,* 50 Ind. 496, what was held an immaterial alteration was made in the body of the bond, but the court said on the question now under consideration: "Where an alteration is made by a stranger to the instrument, without the participation of the party interested, it is a mere spoliation, and the rights of the parties are not affected. * * * The bond of a township trustee is required to be filed and kept in the auditor's office. * * * * He becomes, therefore, its custodian, but he does not thereby become any more a party than if it were not filed in his office, or any more than any other stranger. There is no more reason why a spoliation by him or his deputies should destroy the validity of a bond thus placed by the law in his custody, than there is that a spoliation by any other stranger should have that effect. * * * It would be a startling doctrine to hold that the legal custodians of the various official and other bonds, required by law to be given, could release the obligors by making material changes in the bonds." In *Horn v. Whittier,* 6 N. H. 88, the bond was by a collector to the trustees of the town. One of the trustees by deed released the action to the defendants and authorized a discontinuance. The court said: "We are of opinion that the release is without effect. These plaintiffs are mere trustees, and no one of them can release the action without an authority from the town, for whose benefit the bond was

taken.　The attempt, by Horn, to discharge the action, is a fraud." In *Ford v. Jefferson County,* 4 Gr. (Ia.) 273, the bond was by the county treasurer and collector to the county commissioners.　The collector was to account to the county for county revenue and to the state for state revenue.　The county judge was empowered to settle accounts connected with the county revenue but he attempted to settle also the accounts connected with the state revenue and upon doing so canceled the bond.　In an action on the bond on behalf of the state it was held that the cancelation was no defense because it was unauthorized.　See also *McShane v. Howard Bank,* 20 Atl. (Md.) 776, an attempted release of a surety on a cashier's bond by the president of the corporation.　In *Anderson v. Bellinger,* 6 So. (Ala.) 82, the sheriff after accepting and approving a bond to a plaintiff procured the signature of another surety.　It was held that his act and that of the new surety were the acts of mere strangers and did not affect the validity of the bond.　But in none of these cases was the officer who made the change, named as the obligee in the bond, except that in the New Hampshire case he was one of several obligees, but in that case there was no alteration of the instrument.

The cases, however, are not all in that direction even when the officer who made the change is not named as obligee.　Perhaps the strongest case *contra* is that of *Dover v. Robinson,* 64 Me. 183.　The penal sum in a collector's bond to a town was increased from $2,500. to $25,000. by writing the word "thousand" over the word "hundred."　This was done by the principal with the consent of the selectmen of the town.　The court held that whether the selectmen should be regarded as strangers or as representing the town sufficiently to bind it, the town itself had ratified their act by bringing suit upon the bond as altered (though there was a count on the original form also) and hence that no recovery could be had, but the court also expressed its views in clear and forcible language to the effect that, irrespective of ratification by the town, the alteration by the selectmen had destroyed the bond as an instrument of evidence and that

they as the financial agents of the town and custodians of the bond could defeat the rights of the town in that way and were not to be regarded as mere strangers. That case differs from this in its facts in two respects. There the action was brought on the bond in its altered form; here, in its original form. There an alteration was made in the body of the instrument itself; here, there was a new agreement in the margin. ' The court in that case recognized a difference between the mere unauthorizd or illegal act of an officer and the vitiation of an instrument by him. In *Doane v. Eldridge,* 16 Gray 254, it was held that there must be judgment for the defendants on the ground that a material alteration had been made by the assessors in the body of a collector's bond without the latter's consent and that the suit had been brought on the bond as altered, but, though the court disclaimed expressing an opinion upon any other point, some of its language tends to indicate that the court thought that the alteration alone discharged the defendants from all liability, but it was also said that there could have been no recovery even if the bond had not been altered, for there had been no breach of its original condition. The assessors had changed the obligation of the principal, as they had a right to do.

Thus, there is much to be said in support of the view that the act of the assessor, though he was named as obligee, amounted to a mere spoliation, if it can be considered as a change in the instrument at all. But, however that may be, we are of the opinion that this can not be deemed a change in the instrument. There was no interlineation or erasure. The bond remained intact as it was originally. New matter was written in the margin. An addition in the margin may amount to an alteration, it is true, but it does not necessarily. If it is such as to appear to be a part of the original contract, it may amount to an alteration. But it may be in the margin and yet be an independent collateral agreement—as much so as if it were upon the back of the instrument or on a separate piece of paper. See *Cambridge Sav. Bank v. Hyde,* 131 Mass. 77; *Church v. Fowle,* 142 Mass. 12. The writing in this instance was evidently, as appears on

the face of the bond, a subsequent independent collateral agree-
ment. Not only is it in different ink from the rest of the writ-
ing, and signed separately, and by the obligee alone, but its very
language shows that it was made subsequently and as a separate
agreement, for it assumes that Blackstad had become bound and
purports to be a statement of a permission for him to withdraw.
It was at most an attempt to change the contract by a release of
one of the sureties and not an attempt to tamper with or mutilate
the instrument or to make the instrument itself express a differ-
ent contract or obligation from that originally assented to.
Whatever may have been the result if a material change had
been made in the instrument by the assessor, he did not make
such a change and did not have authority to release by an inde-
pendent collateral agreement a surety on a bond held by him for
the benefit of the Territory.

It is further contended that the trial court erred in admitting
testimony of certain admissions made by Wright as to the short-
age in his accounts. These admissions were of course competent
evidence against Wright himself, but it is urged that they were
inadmissible as against the sureties. It is well settled that
admissions of the principal are admissible against the sureties
if they are made during the term of office covered by the bond
and in connection with his official duties, so that they are part
of the *res gestae,* and some courts hold the admissions admissible
even when they are made after the expiration of the term, pro-
vided the action is, as here, on a joint obligation and against
both principal and sureties. (See *Atlas Bank v. Brownell,* 9
R. I. 168; *Amherst Bank v. Root,* 2 Met. 522; *Singer Mfg. Co.
v. Reynolds,* 168 Mass. 588), though the contrary is held in a
number of cases. The admissions now in question were objected
to generally on the ground that the sureties were bound only by
what the principal did and not by what he may have said he did,
irrespective of whether the admissions were made during or
after the term, but they appear to have been made several
months after Wright had resigned. Assuming, however, that
the objection was sufficiently specific and that the admissions

should have been rejected, the error was harmless, for not only was there ample other uncontradicted evidence to require the findings as to the fact and the amount of the shortage, but some of that evidence consisted of admissions, as to both the fact and the amount of the shortage, made by Wright before his resignation and in connection with his official duties, so that the admissions objected to were at most merely cumulative.

Finally it is contended that the shortage had been made good by the acceptance of the I. O. U.'s by the treasurer. The evidence does not show that the treasurer intended to accept the I. O. U.'s in full payment or satisfaction, even if he had authority to do so. It tends rather to show that he accepted them for purposes of collection and in so far as they might prove to be good. It was not error to find that their receipt by the treasurer did not relieve Wright and his sureties from further liability.

The judgment below is affirmed.

*Smith & Lewis* for plaintiffs in error.

*M. F. Prosser, Assistant Attorney General,* for defendant in error.